Sylvia BARNSON, surviving wife, Rodney E. Barnson, Randy D. Barnson, Eldora Barnson Johnson, John Steve Barnson, Julia Mae Barnson Wise, and Maida Barnson Simms, surviving children, heirs of Earl S. Barnson, deceased; Vonda L. Cropper surviving wife, Helen E. Cropper Davis, Janice Cropper Peterson, William D. Cropper, Charles L. Cropper, and Lorraine Cropper Harris, surviving children, heirs of William E. Cropper, deceased; Eva Dean Hanson, surviving wife, Clyde E. Hanson, David B. Hanson and Shane Hanson, surviving children of Byron Hanson, deceased; Vivian P. Howes, surviving wife of Lester Ralph Peterson, deceased; Maurine Pitts, surviving wife of Elbert Pitts, deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

. Civ. No. C–81–0045.

United States District Court, D. Utah, C. D.

Feb. 2, 1982.

coverage and antitrust law coverage should not be mutually exclusive).

Stewart L. Udall, Phoenix, Ariz., Wayne Owens, John F. Waldo of Parsons, Behle & Latimer, Salt Lake City, Utah, for plaintiffs.

I. Avrum Fingeret, U.S. Dept. of Energy, Washington, D.C., for defendant.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This is an action for damages under the Federal Tort Claims Act arising out of the death of several persons variously employed in uranium mines near Marysvale, Utah, between 1947 and 1969. The deaths occurred as a result of cancer allegedly caused by radiation exposure in the mines. The defendant moved to dismiss plaintiffs' amended complaint, and the motion was argued orally before the court on December 23, 1981. Following the hearing, the court took the matter under advisement and now renders the following decision and order, based additionally on a review of the memoranda and authorities presented to the court.

Dismissal is sought either because this court lacks jurisdiction of the subject matter, under Federal Rule of Civil Procedure 12(b)(1), or because the complaint fails to state a claim permitting of relief, under Rule 12(b)(6). Alternatively, defendant contends that the latter motion can be converted to a Rule 56 motion for summary judgment as no genuine issue of material fact exists.

### I. RULE 12(b)(1) ANALYSIS

Defendant raises three essential grounds for its argument that this court lacks juris-

diction of the subject matter of this case, each based on the requirements for suit against the government mandated by the Federal Tort Claims Act (FTCA). These issues necessitate a delicate resolution of the interrelationship of a federal district court's limited jurisdiction, the nature of a Rule 12(b)(1) motion to dismiss, and the exceptions to the waiver of sovereign immunity contained in the FTCA.

 A 12(b)(1) motion is the proper avenue to challenge the court's subject matter jurisdiction, and Rule 12(h)(3) requires that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Courts have struggled in dealing with Rule 12(b)(1) motions in several contexts, however, and a close examination of the nature of the rule is necessary here. The more typical motion to dismiss for lack of subject matter jurisdiction addresses the complaint on its face. The motion in this context attacks procedural defects and not the merits of the action. *Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977). Facial attacks on the existence of subject matter jurisdiction, occurring at an early stage of the proceedings, like motions under Rule 12(b)(6), are accorded the similar safeguard of having all the allegations of the complaint and the inferences drawable therefrom regarded as true. *E.g., Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981), *Mortensen, supra*, 549 F.2d at 891.

 Not all motions under Rule 12(b)(1) are treated in this fashion, however. Because of the nature of a federal district court's limited jurisdiction, the court is empowered to examine its right to hear a case more broadly than the mere allegations of the complaint, and thus the court may inquire into facts that could not be considered under a 12(b)(6) motion. In fact, the court may, in determining its jurisdiction to hear the case, resolve disputed facts, which it cannot do under a 12(b)(6) motion, or even when presented with a Rule 56 motion for summary judgment. *See, e.g., Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1010 n.4, 91 L.Ed.2d 1209 (1947). "The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." [1] *Williamson*, 645 F.2d at 413.

A difficult question in deciding a 12(b)(1) motion arises when the alleged jurisdictional defect is connected with or constitutes an element of the claimed federal statutory cause of action. The combination of the plaintiff's burden of proof regarding jurisdiction, the court's freedom to resolve disputed jurisdictional facts, and the timing of a jurisdictional attack, arising, as it may, any time after jurisdiction is questioned, may require the plaintiff to prove in fact the merits of his claim at the earliest possible stage of the proceeding without full benefit of discovery and trial. Moreover, this situation potentially could arise in innumerable contexts because, in a truistic sense, a district court is without jurisdiction whenever a federal cause of action is not stated for which relief can be granted. Thus, for example, courts have been faced with deciding motions to dismiss for lack of subject matter jurisdiction, early in proceedings, where the basis for dismissal is alleged to be an insufficient nexus with interstate commerce to sustain an action under the federal antitrust laws and where

1. The *Williamson* court makes it clear that the particular basis for a 12(b)(1) dismissal is crucial for appellate review because the standard of review changes, depending on the extent of the court's factual inquiry. Review of a dismissal on either of the first two bases necessitates merely determining the correctness of the district court's legal determinations and possibly that the facts considered are indeed undisputed. If the district court resolves disputed facts, these must be specified so the reviewing court can apply a "clearly erroneous" standard to these determinations. 645 F.2d at 413. The latter standard may be different if those facts address the merits of the action. *Id.* at 413 n.6 and 415 n.10.

the basis is that the interests sold were not "securities" as defined by the federal securities laws. *See, e.g., id.* (securities); *Chatham Condominium Association v. Century Village, Inc.*, 577 F.2d 1002 (9th Cir. 1979) (antitrust); *Mortensen, supra*, 549 F.2d 884 (antitrust).

The courts have resolved these dilemmas most often by "deferring" a ruling on the jurisdictional questions until trial, or at least until the record is sufficiently complete. *See, e.g., Allen v. United States*, 527 F.Supp. 476 at 486 (D.Utah, 1981); *Blessing v. United States*, 447 F.Supp. 1160, 1167 (E.D.Pa.1978). Thus, a court finds jurisdiction, subject to the possibility that jurisdiction may eventually be shown to be lacking. If factual issues are raised, directed both to the merits of the case and to the jurisdiction of the court, this procedural route appears best to protect the rights of all parties. Moreover, this does not achieve a result inconsistent with a motion under either Rule 12(b)(6) or Rule 56. If the court cannot determine on the face of the complaint that jurisdiction is lacking, where the jurisdictional facts are intermeshed with the merits, a 12(b)(6) motion could not be granted, because the applicable test is essentially the same. Similarly, if those facts are disputed, no summary judgment is proper. This result is also supported by the provisions of Rule 12. Subdivision (g) states in applicable part: "The defenses specifically enumerated (1)–(7) in subdivision (b) of this rule . . . shall be heard and determined before trial on application of any party, *unless the court orders that the hearing and determination thereof be deferred until the trial.*" (Emphasis added).

There is authority, however, indicating that if the court defers the resolution of jurisdiction to trial, where the basis of jurisdiction is an element of the cause of action, it then must decide the question on the merits. *See Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (affirming summary judgment rather than dismissing for lack of jurisdiction); *Williamson v. Tucker, supra*, 645 F.2d at 415–17. Under this view, the court doesn't really defer the jurisdictional question; it decides it and proceeds to examine the merits of the action, which contains the same issue.

The origin of this view was the Supreme Court decision in *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1945). There, the Court reviewed a dismissal for lack of subject matter jurisdiction on the ground that there was no implied federal right of action under the Fourth and Fifth Amendments. While dismissing on jurisdictional grounds, the district court denied a motion to amend the complaint. The court stated, in reversing:

> Jurisdiction . . . is not defeated as respondents seem to contend, by the possibility that the averment might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

327 U.S. at 682, 66 S.Ct. at 776. The Fifth Circuit, in *Williamson*, elaborated on this language as follows:

> Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. The Supreme Court has made it clear that in that situation no purpose is served by indirectly arguing the merits in the context of federal jurisdiction. *Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to*

*exist, the case is dismissed on the merits.* This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim . . . .

645 F.2d at 415 (emphasis added and footnote deleted).

■ The *Bell* and *Williamson* courts applied the standard that where the jurisdictional claims were inextricable from the claims on the merits, the action should be dismissed on jurisdictional grounds only where the plaintiff's claim is clearly insubstantial or where the alleged federal statutes are immaterial to the claim. While the court is aware of no cases applying this standard in an FTCA case, it finds that standard applicable here to any jurisdictional grounds that are inextricably commingled with the merits. The practice of assuming jurisdiction and ruling on the merits after trial, even where the court's jurisdiction is then called into question, protects the defendant from never-ending litigation and also avoids the conceptual dilemma of ruling on the merits in a jurisdictional setting—a situation that has caused considerable confusion in FTCA cases.

■ The problem arises particularly in FTCA cases because, conceptually, the court *cannot* rule on the merits if it has no jurisdiction. There appears to be no justification for such a ruling under the Federal Rules. While it is perhaps assumed that Rule 41(b) implies such discretionary power in the court, a careful reading of that rule shows its specific exception of dismissal for lack of subject matter jurisdiction. Because the FTCA is a limited waiver of sovereign immunity, granting limited jurisdiction to the courts under section 1346(b), any failure to comply strictly with the Act's requirements is a jurisdictional defect. Courts from *Dalehite* to the present have ruled on the merits in FTCA cases where exceptions to the FTCA waiver of liability applied to the facts presented. This has led at least some courts to consider these exceptions to be defenses rather than jurisdic-

tional requirements. See cases cited in *Blessing*, 447 F.Supp. at 1167 n.6. The rule in the Tenth Circuit is clearly that all section 2680 exceptions are jurisdictional. *See, e.g., Baird v. United States*, 653 F.2d 437, 440 (10th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1004, 71 L.Ed.2d 296 (1982).

The mere statement that the exceptions are jurisdictional provides little guidance in determining how to proceed under a Rule 12(b)(1) motion, however, while treating the exceptions as defenses risks effectively shifting the burden of proof to the defendant. Judge Jenkins, in *Allen*, avoided the latter dilemma by demonstrating how the discretionary function exception is really embodied as a substantive issue of tort law, utilizing a duty analysis. *See Allen*, at 486–487. The *Allen* analysis thus effectively considers the exception as part of the merits of the case while adhering to the jurisdictional approach, as have several other courts. *See Blessing*, 447 F.Supp. at 1167 n.6.

■ This court believes application of the *Bell* and *Williamson* test can alleviate much of the confusion exhibited in FTCA cases. If a court can effectively rule, on one of the three bases described above, that subject matter jurisdiction is lacking, it should of course do so. If the court cannot resolve disputed or unknown facts that are inextricable from the merits and the claim is not insubstantial, the court should assume jurisdiction and proceed on the merits, thus fully protecting the interests of all parties. It remains for the court to analyze the three grounds for dismissal alleged here in accordance with this standard.

## II. ANALOGOUS PRIVATE LIABILITY

■ The defendant's initial contention is that the court lacks subject matter jurisdiction because there is no analogous private liability. Section 2674 of the FTCA permits government liability in tort, but only "in the same manner and to the same extent as a private individual under like circumstances." The failure to establish an analogous private liability is well established to be a

jurisdictional defect under the FTCA, and the requirement is reiterated in the statute granting federal district courts jurisdiction over these cases. *See* 28 U.S.C. § 1346(b).

The court can decide most of this issue under Rule 12(b)(1) here by accepting as true the allegations on the face of the complaint and determining if private liability would exist under Utah law based on those facts. The amended complaint alleges twelve causes of action. Briefly summarized, the first cause of action alleges that government employees had extensive knowledge of the potentially dangerous effects of radiation in the mines prior to, or early in, the period of plaintiffs' decedents' exposure. The government also allegedly knew or recognized safety measures capable of mitigating the danger and knew that the mining companies and others lacked the knowledge, skill, and resources to utilize those safety measures. Therefore the government employees undertook to inspect the mines, issue warnings, monitor the health of the workers, and close mines where necessary, all for the purpose of protecting plaintiffs' decedents and other workers. In performing these undertakings, plaintiffs allege that government employees failed to exercise reasonable care in various particulars and that plaintiffs' decedents relied on these undertakings to their detriment.

The second, third, and fourth causes of action relate to the negligence of medical personnel. The second cause of action alleges that medical personnel undertook, because of their extensive knowledge of the dangers in the mines, to examine the workers and then negligently failed to inform plaintiffs' decedents of their exposure to those dangers. Plaintiffs' decedents' reliance on these examinations caused them detrimental injury. The third cause of action is similar, but includes an allegation of negligent failure to obtain the informed consent of plaintiffs' decedents to these examinations. The fourth cause of action alleges that the above actions of the medical personnel negligently subjected plaintiffs' decedents to medical experiments without their consent.

The fifth cause of action is based on defendant's exclusive ownership, control, and promotion of the uranium industry, with the mining companies operating in the role of independent contractors. This action alleges negligence in employing the contractors to mine the ore and negligence in protecting the workers from dangers the defendant knew would be present. The sixth cause of action alleges that defendant exercised exclusive control over uranium production, pursuant to section 5(b) of the Atomic Energy Act of 1946, and paid such low compensation under the procurement contracts that mine owners were negligently precluded from instigating safety and health measures.

The seventh cause of action alleges that defendant, exercising ownership and control over uranium production, was engaged in an ultrahazardous activity, which harmed plaintiffs' decedents because negligently performed. The eighth cause of action alleges that defendant owned the uranium mines, knew of dangerous conditions present there, and negligently failed to notify the lessees of the mines—the mining companies—of hidden dangerous conditions, causing harm to plaintiffs' decedents.

The ninth cause of action alleges that defendant was the owner of all uranium ore from the time it was dislodged from the geological formation, and that when dislodged, the ore emitted radioactive materials and became a dangerous instrumentality. The defendant's failure to exercise due care in the handling of the dangerous instrumentality caused plaintiffs' decedents harm. The tenth cause of action contains allegations similar to the fifth cause of action, except the negligence alleged is failure to provide for safety measures by contract. The eleventh cause of action similarly alleges a failure to include safety measures in the uranium procurement contracts, when such provisions were contained in beryllium contracts. The final cause of action alleges negligence in licensing the possession and transfer of the uranium materials.

■ From the outset, it is clear that the mere novelty of these claims is insufficient to support their dismissal. *See Rayonier, Inc. v. United States*, 352 U.S. 315, 319, 77 S.Ct. 374, 376, 1 L.Ed.2d 354 (1957). Plaintiffs' principal legal argument supporting these claims is that defendant is liable on a "Good Samaritan" theory, based on *Restatement (Second) of Torts*, §§ 323 and 324A (1965). Section 323 postulates liability for one who undertakes to render services to another, which he should recognize as necessary to protect the other, and fails to exercise reasonable care in performing that undertaking, so that either the risk of harm to the other is increased or the harm is suffered because the other relied on the undertaking. Section 324A similarly defines liability when one undertakes to perform services for another with the same result, but necessary for the protection of a third person. In addition, Section 324A permits liability where the undertaking is a duty owed by the other to the third person.

This theory of liability has been allowed previously in FTCA actions, *see, e.g., Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Raymer v. United States*, 660 F.2d 1136 (6th Cir. 1981); *Blessing*, 447 F.Supp. 1160, and appears amply stated in the first cause of action, relating to negligent inspections, and in the second cause of action, relating to the undertaking to perform medical examinations. While the Utah Supreme Court has apparently never addressed or adopted the "Good Samaritan" doctrine, this court is of the opinion that it will adopt it when it is presented with the theory and appropriate facts. The court specifically notes that the Utah Legislature has passed a statute exempting from liability medical practitioners who render *emergency* aid in good faith. *See* Utah Code Ann. § 58–12–23 (1974). This statute appears to anticipate a "Good Samaritan" theory of liability, much as the Utah Products Liability Act, Utah Code Ann. §§ 78–15–1 to –6 (1977), anticipated the Utah courts' later adoption of section 402A of the Restatement, which adoption was predicted four times under the Erie doctrine by this circuit. *See Ernest W.*

*Hahn, Inc. v. Armco Steel Co.*, 601 P.2d 152, 156 n.4 (Utah 1979).

■ Defendant argues that the "Good Samaritan" doctrine is inapplicable under the FTCA because government actions taken pursuant to regulatory authority are purely governmental in nature and can never give rise to analogous private liability. This argument has long been discredited and "is plainly wrong." *United Scottish Ins. Co. v. United States*, 614 F.2d 188, 192 (9th Cir. 1979). "It is clear that the government may not avoid liability under the FTCA on the ground that the activity giving rise to the claim involved 'uniquely governmental' functions. Congress did not predicate liability on 'such a completely fortuitous circumstance [as] the presence or absence of identical private activity.'" *Raymer*, 660 F.2d at 1140 (*quoting Indian Towing*, 350 U.S. at 67, 76 S.Ct. at 125). Cases like *Taylor v. United States*, 521 F.Supp. 185 (W.D.Ky.1981), cited by defendant, were decided on their facts, and any language indicating that the "Good Samaritan" doctrine can never apply under the FTCA to inspections was disapproved in *Raymer*, 660 F.2d at 1144.

■ The plaintiffs here have alleged all the elements necessary under the "Good Samaritan" doctrine. Whether they can develop evidence proving that theory remains to be seen, but the court cannot rule that on the face of the amended complaint no analogous private liability exists under the first and second causes of action. While plaintiffs must meet the strict requirement of the "Good Samaritan" doctrine, the court will not now attempt to determine what ultimate facts the plaintiffs may or may not discover, and will therefore deny the Rule 12(b)(1) motion relating to claims 1 and 2.

■ Likewise, the third and fourth causes of action appear to allege claims similar to medical malpractice for which private liability might exist. There are no facts presented to the court at this time which dispute these allegations of the complaint, and the 12(b)(1) motion to dismiss these claims is also denied.

■ The sixth cause of action appears to arise solely from payment of unreasonably low compensation to mine operators under procurement contracts. To the extent that the claim arises solely out of defendant's ownership or control of uranium production, it is duplicative of other causes of action. This court held in its decision of July 8, 1981, dismissing plaintiffs' original complaint, that "the purchase of uranium by the United States [does not] give rise to an actionable tort duty or an analogous private liability that would invest the court with jurisdiction over the subject matter." The court still fails to recognize how a duty could arise from the vendor-vendee relationship running to plaintiffs here, and no additional facts or argument have been presented to the court with regard to this particular question. There appearing to be no analogous private right of action alleged in the sixth claim, accepting the facts alleged to be true, this cause of action is dismissed under Rule 12(b)(1).

■ The remaining causes of action allege various relationships between defendant and the mine operators: owner-independent contractor, lessor-lessee, employer-employee, and owner-licensee. This court held in its previous decision in this case that the mere licensing of mine operators did not give rise to an actionable tort duty or an analogous private liability. Inasmuch as the twelfth cause of action appears to depend solely on a duty arising out of defendant's licensing activities, that action is dismissed under Rule 12(b)(1).

The other remaining causes of action appear to state facts for which an analogous private liability might exist. Defendant argues, however, that the government did not own the mines, lease the mines, or hire independent contractors and supports this argument with the affidavit of John Patterson of the Department of Energy. While there is some dispute between the parties as to the propriety of considering the affidavit in connection with a Rule 56 motion for summary judgment, the court can consider the affidavit in determining its jurisdiction. While the affidavit is certainly persuasive, the court is of the opinion that it cannot accept as fact at this time the legal conclusions stated therein. The ultimate determination of the relationship between defendant and the mine operators may depend on facts not yet known to the parties or the court at this time. Indeed, the legal label placed on that relationship may depend ultimately on the extent of defendant's control over or supervision of the mines, which is the language used in the amended complaint.

Defendant argues that even if the Patterson affidavit is not conclusive, no cause of action can be established based on an independent contractor relationship. It is true that the FTCA exempts the government from liability for the actions of independent contractors, but the claims here are premised on *government* actions, not on the actions of the mine operators or miners. The court is constrained to deny the 12(b)(1) motion based on claims 5, 7, 8, 9, 10, and 11, subject to further discovery in this case. In so ruling, the court does not at this time make any resolution of disputed underlying facts.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The second of defendant's contentions for dismissal relates to plaintiffs' failure to exhaust administrative remedies. Specifically, defendant claims plaintiffs failed to file an administrative claim with the appropriate agency as required by section 2675(a) of the FTCA. Since plaintiffs' claims 2, 3, and 4 relate to the activities of medical personnel, presumably from the Public Health Service (PHS), defendant argues that claims should have been presented to the Department of Health, Education, and Welfare, now the Department of Health and Human Services (HHS).

Section 2675(a) requires as a jurisdictional prerequisite to an FTCA action that a notice of claim be filed with the "appropriate" agency. It is undisputed that plaintiffs filed such claims on standard forms with the Department of Energy (DOE).

The court must therefore determine whether filing the claim with DOE bars these causes of action, and concludes that it does not.

The regulations implementing section 2675(a) specify the appropriate agency to be the agency "whose activities give rise to the claim." 28 C.F.R. § 14.2(b)(1) (1980). There are no facts before the court which define the relationship between PHS and the Atomic Energy Commission (AEC) in undertaking the activities underlying these actions. As plaintiffs point out, the medical personnel might very well have been acting as agents of the AEC, making DOE the appropriate agency for filing a claim.

Plaintiffs' position is further supported by the government procedure for dealing with claims filed with the wrong agency. "When a claim is presented to [an improper] Federal Agency, that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer. If transfer is not feasible the claim shall be returned to the claimant." *Id.* It is undisputed that there was no transfer of these claims to PHS, and they were not returned to the plaintiffs.

Defendant counters that the claim presented to DOE was insufficient notification of any medical malpractice claim, and therefore they had no reason to consider transferring the claim. As this district has recognized, however, and defendant does not dispute, the purpose of an administrative claim is to "put defendant on notice of the 'incident' out of which this action arises [and to inform] defendant of the 'facts and circumstances' underlying the claim." *Mellor v. United States*, 484 F.Supp. 641, 642 (D.Utah 1978) (Anderson, J.). The purpose of the claim procedure is "to allow the agency to expedite the claims procedure and avoid unnecessary litigation." *Id.* The purpose of the transfer or notice requirement is apparently to protect claimants, who may or may not be represented by counsel, from procedural errors unknown to them but known to the agency.

The court is of the opinion that a claim is sufficient which notifies the agency of the facts of the incident and need not elaborate all possible causes of action or theories of liability. *See id.* at 643. The claims made by plaintiffs here particularly exemplify the need for a less than technical analysis of the administrative claim. Plaintiffs' administrative claims describe the accident as follows:

> The injury and/or death of the claimant was caused by the *negligence of various agents* of the United States Government *including officials and entities of the Atomic Energy Commission* (now part of the U.S. Department of Energy). Although it had explicit knowledge of the extreme health hazards involved in radiation exposure attendant upon the mining of uranium in unventilated or poorly ventilated mines, the Atomic Energy Commission negligently failed to warn claimant or claimant's decedent of said dangers. Moreover, the Atomic Energy Commission also negligently failed to implement rules, regulations and standards governing uranium mining prepared by its own experts responsible for industrial safety which said regulations and standards would have protected claimant from injury or death from excessive radiation exposures.

(Emphasis added). The description clearly addresses the possibility that officials from other agencies might be implicated. The problem here is that the activities of the medical personnel were very much intertwined with the AEC activities, and it is still unclear, two and a half years after the filing of the administrative claims, what the relationship was between the doctors and the AEC.

Without belaboring the factual issue, the court is convinced that plaintiffs' administrative claims satisfy section 2675(a) and the government regulations. DOE knew that the claim might involve non-AEC personnel, and they knew or should have known that their actions in relation to the uranium mine workers involved medical personnel, be they AEC's or PHS's agents. Considering all of the circumstances, their

failure to request elaboration of the claim or to transfer it to PHS cannot now bar plaintiffs' causes of action based on negligence of medical personnel.

■ In so holding, the court does not wish to imply that administrative claims can be waived, or that claimants need not notify the appropriate agency of the incident giving rise to the claim. Rather, the court holds that the claims plaintiffs filed with DOE satisfied the requirements of section 2675(a). The facts and legal theories of this case are very complex. This is not simply a case of failure to notify an agency of a separate negligent act occurring at a completely different time. *See Franz v. United States*, 414 F.Supp. 57 (D.Ariz.1976). Nor is this situation one in which the medical causes of action are "obviously distinct and different" from the other causes of action alleged, for which a proper claim was submitted. *See Provancial v. United States*, 454 F.2d 72 (8th Cir. 1972). The claims here allege a wide pattern of negligence in notifying plaintiffs' decedents of the dangers to which they were subjected. The AEC's activities at least primarily, and perhaps exclusively, gave rise to these claims. Therefore the court denies the motion to dismiss claims 2, 3 and 4 for failure to exhaust administrative remedies.

## IV. DISCRETIONARY FUNCTION EXCEPTION

■ The third ground for dismissal advanced by defendant is that the court lacks subject matter jurisdiction because of the discretionary function exception to the FTCA's waiver of sovereign immunity. Section 2680(a) provides that the waiver shall not apply to:

Any claim based upon an act or omission of an employee of the government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused.

The court cannot attempt to improve on the exposition of section 2680(a) contained in Judge Jenkins' recent *Allen* decision and need only make reference to that analysis here. *Allen* more than adequately demonstrated how the discretionary function exception is connected with the merits of the tort claim. *See* at 486–487.

The *Allen* case bears factual similarity to this case in that it involved broad allegations of negligence on the part of government agencies and employees, in conducting open-air testing of nuclear weapons. In applying a policy-oriented approach to the discretionary function exception, Judge Jenkins concluded:

This Court cannot dismiss these claims wholesale at this stage of this proceeding upon the basis that each action up and down the ladder of governmental activity in conducting the testing program over a period of years was "discretionary", and thus insulated the government from answering in damages for alleged misconduct in carrying out the testing program. At this point we don't know enough.

At 486.

The court finds Judge Jenkins' conclusions applicable here. The court cannot determine that all of the acts or omissions alleged by plaintiffs were performed by high-level, immune decisionmakers. While some or all of the government activities in question may ultimately be demonstrated to fall within the discretionary function exception, the court cannot say, on the present record, that plaintiffs' claims are insubstantial under section 2680(a). Therefore defendant's motion to dismiss on this ground is denied.

The court finds the above discussion to adequately dispose of defendant's Rule 12(b)(6) motion and motion for summary judgment, so those motions are denied without prejudice to their reassertion on a more complete record.

Accordingly,

IT IS ORDERED that the sixth and twelfth causes of action are dismissed under

Rule 12(b)(1). All other aspects of defendant's motions are denied.