OPERATING ENGINEERS LOCAL UNION NO. 3 of the INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Plaintiff,

v.

George BOHN, Responsible Contracting Officer and Division Administrator of the United States Department of Transportation, Federal Highway Administration; Andrew Lewis, United States Secretary of Transportation; C. V. Anderson, Responsible Contracting Officer and Assistant Administrator of the Utah Department of Transportation; W. W. Clyde Company, Defendants.

Civil No. C–81–0022.

United States District Court,
D. Utah, C. D.

June 11, 1982.

James S. Lowrie, Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, P. H. McCarthy, Jr., John J. Davis, Jr., Vincent S. Camacho, McCarthy, Johnson & Miller, and Lawrence B. Miller, San Francisco, Cal., for plaintiff.

Brent D. Ward, U. S. Atty., and Lawrence J. Leigh, Asst. U. S. Atty., Salt Lake City, Utah, for defendants Bohn and Lewis.

Leland D. Ford, Asst. Atty. Gen., Salt Lake City, Utah, for defendant Anderson.

Richard O. Jones, Regional Counsel, Denver, Colo., for Federal Highway Administration.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This is an action for injunctive relief which seeks an order requiring defendants to incorporate the appropriate prevailing wage in a solicitation of bids for a highway construction project as required by the Davis-Bacon Act, 40 U.S.C. § 276a. As the present posture of the case is rather unusual and critical to the issues before the court, a short recitation of the background facts is appropriate.

In November of 1980, the Utah Department of Transportation (UDOT) issued a solicitation of bids for construction of a portion of Interstate Highway 15 in Juab County, Utah. The construction project was federally funded under the Federal-Aid Highway Act, 23 U.S.C. § 101 *et seq.* The prevailing wage rate for "Power Equipment Operators" required under the Davis-Bacon Act to be paid on the project was the

rate negotiated by Local No. 3 in its Master Agreement for Utah, and published in the Federal Register by the Department of Labor. The wage rates in the Agreement were substantially increased on June 30, 1980, but the older wage rate in effect from July 2, 1979 to June 30, 1980 was mistakenly published in the Federal Register in September of 1980. The UDOT incorporated the erroneous wage rate in its solicitation of bids.

The bids were to be opened on December 16, 1980. On December 4, 1980, Local No. 3 learned of the error in the solicitation of bids and immediately contacted the Department of Labor. On Friday, December 5, 1980, Labor notified defendants Bohn of the Federal Highway Administration (FHA) and Anderson of the UDOT that the published wage rate was erroneous and that a telefax of the correct rate would be transmitted that day. The state defendants prepared to work through the weekend to issue a modification to the solicitation.

On Monday, December 8, Bohn and Anderson received the telefax copies of the corrected prevailing wage rate and also letters dated December 5 from the Director of the Division of Government Contract Wage Determinations of the Department of Labor instructing them that the corrected rate would be published in the Federal Register on December 9, effective as of December 5. The UDOT officials consulted with the State Attorney General's Office and, following section 400–7.1 of the Labor Compliance Manual, which is apparently a FHA guideline for implementing 29 C.F.R. § 1.7, determined that they were not obligated to modify the solicitation because the corrected wage rate was not published in the Federal Register ten days before the opening of bids. They also consulted the FHA, which confirmed their conclusion.

The UDOT officials apparently did not specifically determine whether there was sufficient time to notify the prospective bidders of the modification, although they were clearly concerned that properly notifying the 53 prospective bidders from around the country would risk delaying the December 16 opening of bids. Time was especially important because the federal funds had to be committed before year-end or they would be lost.

Plaintiff argues vehemently that the UDOT's reliance on section 400–7.1 of the Compliance Manual, which apparently conflicts with the regulation itself, 29 C.F.R. § 1.7, was erroneous. Section 400–7.1 states, in effect, that prevailing wage rate modifications need not be included in solicitations unless published in the Federal Register on or before the tenth day before the bid opening. Section 1.7(b)(2) of the Labor regulations states:

All actions modifying a general wage determination shall be applicable thereto, *but modifications published in the FEDERAL REGISTER later than 10 days before the opening of bids shall not be effective, except when* the Federal agency (in the case of Federal-Aid Highway Acts as codified in 23 U.S.C. 113, *the State highway department of each State) finds that there is a reasonable time in which to notify bidders of the modification.*

29 C.F.R. § 1.7(b)(2) (1981) (emphasis added).

The court is not as convinced as is plaintiff that section 1.7(b)(2) required the UDOT to incorporate the modification in this instance, regardless of their reliance on the guideline instead of the regulation. That the FHA drafted the guideline to conform with their practice of disregarding modifications published later than ten days prior to bid openings indicates that they at least viewed the regulation as discretionary rather than mandatory—an interpretation at least arguable under the language of the regulation.

For whatever reason, then, the UDOT did not modify their solicitation of bids. Counsel for Local No. 3 was notified on December 17, 1980, and filed this action on January 12, 1982, seeking to modify the contract to include the correct wage rate and to enjoin performance of the work until the contract was modified. That same day, a TRO hearing was held before Judge Jen-

kins of this court because this judge was hearing another matter in Denver. At the hearing, defendants agreed not to sign the contract or to begin work until a preliminary injunction hearing could be held before this judge. A hearing was set for January 23, 1981, but prior thereto and on January 21 the defendants agreed to modify the contract to include the correct wage rate and so stated before the court on that date. The modification was formally approved by all appropriate officials on February 10, 1981, and by February 20, the contractor had corrected all payrolls and fully compensated all employees under the correct wage rate.

Hearing was set for March 5, 1981, to enter a consent decree, and a copy of a proposed consent decree was mailed by plaintiff to defendants. The hearing was continued to March 19 and then never held, and for reasons not specified in the record, defendants never signed the consent decree. The only obvious reason for dispute would appear to be that under this decree plaintiff was to recover its costs, "including travel and deposition expenses," and "reserved its right to move the Court for an award of attorneys' fees." No express request for attorneys' fees is contained in the original complaint.

No further action was taken by either side to this dispute until August of 1981 when the court on its own motion scheduled a status report on the case. At the August 17 hearing, plaintiff requested leave to file and did file an amended complaint. This complaint sought the injunctive relief requested originally and for the first time alleged a deprivation of rights under 42 U.S.C. § 1983 and sought attorneys' fees under section 1988. Defendants moved for summary judgment, and plaintiff then moved for attorneys' fees under section 204(c) of the newly effective Equal Access to Justice Act, 28 U.S.C.A. § 2412 (Supp. 1982). It is these motions that are presently pending before the court.

## I. DEFENDANTS' SUMMARY JUDGMENT MOTIONS

 At this stage of the proceeding, there remains no substantive relief to be awarded. Plaintiff's counsel admits that the January 21, 1981 concession "achieved all of the substantive relief sought." Declaration of James S. Lowrie at 3. As there are no present grounds for issuing an injunction, plaintiff's substantive claims are moot and the defendants' motions for summary judgment appear well taken. Moreover, plaintiff's interest in opposing summary judgment is, in reality, intended merely to preserve its status as a prevailing party for the purpose of the attorneys' fees statutes. While plaintiff belatedly indicated an interest in a formal order in its favor, it does not specify how that order should be formed except by reference to the consent decree tendered to and rejected by defendants. This court cannot perceive how it can now grant any substantive relief. All that remains is the question of attorneys' fees, and, because the fact that plaintiff fails to presently qualify for injunctive relief does not foreclose this issue, summary judgment for defendants poses no dilemma at this juncture of the case.

> Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated. Moreover, the Senate Report expressly stated that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S.Rep.No.94–1011, p. 5 (1976).

*Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980).

While the Tenth Circuit has stated that "a court determination on the merits against plaintiff . . . will prevent the award of attorneys fees regardless of any positive effect the lawsuit has," *Chicano Police Officers Association v. Stover,* 624 F.2d 127, 131 n.5 (10th Cir. 1980) (emphasis added), this language is consistent with *Maher v. Gagne* and inapplicable here, where no ruling on the legal merits has been made. *Compare*

*Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 273 (10th Cir. 1975) (no fees awarded where plaintiff's claims *finally* adjudicated to be meritless) *with Parham v. Southwestern Bell Telephone Company,* 433 F.2d 421 (8th Cir. 1970) (injunctive relief denied after voluntary change in employment practices but fees awarded). The court will therefore grant defendants' motions for summary judgment on the claims for equitable relief and turn to the attorneys' fees issues.

## II. ATTORNEYS' FEES UNDER SECTION 1988

Plaintiff bases its claim for attorneys' fees on two statutory provisions. First, plaintiff seeks attorneys' fees against the state defendants[1] under 42 U.S.C. § 1988 as the "prevailing party" under its section 1983 claim. Section 1983 declares that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .

Section 1988 provides: "In any action or proceeding to enforce a provision of section[ ] . . . 1983, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."

Unquestionably, the threshold determination is whether plaintiff was the "prevailing party" in its section 1983 claim. There can be little doubt that plaintiff achieved all of its goals from this lawsuit, but that alone does not compel the determination that plaintiff prevailed for the purpose of sec-

tion 1988, for what plaintiff must prevail on is the section 1983 claim. *See Lanner v. Wimmer,* 662 F.2d 1349, 1363 (10th Cir. 1981).

Where plaintiff does not receive a judgment on the merits in a 1983 action, courts generally have applied a "catalyst" test to determine the prevailing party. Most courts have followed a two-part analysis first established in *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir. 1978). *See, e.g., Harrington v. DeVito,* 656 F.2d 264, 266–68 (7th Cir. 1981); *Iranian Students Association v. Sawyer,* 639 F.2d 1160, 1163–64 and n.6 (5th Cir. 1981); *United Handicapped Federation v. Andre,* 622 F.2d 342 (8th Cir. 1980). *See also Gurule v. Wilson,* 635 F.2d 782, 792 (10th Cir. 1980). *Nadeau* posed two questions for determining a prevailing party. First, a factual inquiry is required as to whether "plaintiffs' suit and their attorney's efforts were a necessary and important factor" in improving their situation. 581 F.2d at 281. This "causation" prong of the *Nadeau* test was recognized by the Tenth Circuit in *Taylor v. Safeway Stores, Inc.,* 524 F.2d at 273. The second question is a legal one: whether defendants' conduct in response to the lawsuit was required by law; if not, then "defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense." *Nadeau,* 581 F.2d at 281 (citing *Taylor*). Recognizing the obvious difficulty in conclusively determining the latter factor, the *Nadeau* court found that in that case the court was sufficiently familiar with the underlying facts and law to evaluate whether the claim was " 'frivolous, unreasonable, or groundless or that the plaintiff continued to litigate after it clearly became so.' " *Id.* (quoting *Christiansburg Garment Company*

---

1. There is apparently some question as to whether the UDOT is a party to the action as well as C. V. Anderson, its Assistant Administrator. As Mr. Anderson is sued solely in his official capacity and not as an individual, the issue has little relevance for this decision. A suit against a state officer in his official capacity is basically a suit against the state. For example, the Eleventh Amendment bars actions for monetary damages against state officials where the award will be paid from the state treasury. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Likewise, the Eleventh Amendment does not bar suit against officials or agencies for declaratory or injunctive relief. Thus the court will refer in this opinion to the state defendants or the state and need not address the question of who exactly is a party to the action, as it assumes any recovery will be from the state treasury.

*v. E.E.O.C.*, 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). If the claim was found to be frivolous, the court advocated the denial of attorneys' fees on those issues.

■ Applying this analysis to the case at bar, both factual and legal difficulties appear. Clearly, plaintiff's lawsuit caused them to receive all the relief they sought to gain. This all occurred before they amended their complaint to allege a violation of section 1983, however, and in a sense, that claim had nothing to do with the defendants' decision to amend the work contract. This court finds it difficult under these facts to postulate a causal connection between the 1983 claim and the defendants' capitulation, regardless of the fact that the 1983 claim might have been raised originally.

If it could be determined that plaintiff's 1983 claim met the first prong of the *Nadeau* analysis, the fact of the belated assertion of the claim would warrant more close attention to the second inquiry. In this case, not only were defendants not confronted with the 1983 claim at the time they voluntarily complied with plaintiff's requests, they had virtually no chance of attacking the validity of the claim on the merits because all the relief plaintiff sought had already been conceded. While the factual and legal pitfalls that confront plaintiffs in 1983 actions are myriad, and unnecessary to discuss here, a brief analysis of the more obvious legal problems with plaintiff's present 1983 claim is perhaps warranted.

■ Plaintiff alleges no deprivation of constitutional or civil rights. The only right of which plaintiff alleges having been deprived is the right of its members to receive the correct prevailing wage under 40 U.S.C. § 276a. As plaintiff has accurately pointed out to the court, purely statutory violations of federal law are cognizable under section 1983. *See Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Soon after the Supreme Court recognized purely statutory violations of section 1983 in *Thiboutot*, how-

ever, it noted two exceptions to such actions. *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981); *Pennhurst State School v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981).

■ The first bar to an action for a purely statutory violation of section 1983 is where "the remedial devices provided in a particular act are sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex County Sewerage*, 453 U.S. at 20, 101 S.Ct. at 2626. "[W]hen 'a state official is alleged to have violated a federal statute which provides its own enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983.'" *Id.* (quoting *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 673 n.2, 99 S.Ct. 1905, 1945 n.2, 60 L.Ed.2d 508 (1979) (Stewart, J., dissenting)). *Cf. Carlson v. Green*, 446 U.S. 14, 20–23, 100 S.Ct. 1468, 1472–1474, 64 L.Ed.2d 15 (1980) (Federal Tort Claims Act not "sufficient protector" of constitutional rights to preclude *"Bivens"* remedy for constitutional violation); *Meyerson v. Arizona*, 507 F.Supp. 859, 864 (D.Ariz.1981) ("§ 1983 cannot be used to circumvent the remedial provisions of the Revenue Sharing Act"). Accordingly, the Court in *Middlesex County Sewerage* concluded that the express comprehensive remedial schemes of two separate statutes both foreclosed implied private actions and supplanted remedies available under section 1983. 453 U.S. at 21, 101 S.Ct. at 2627.

■ The second exception to a 1983 action for a purely statutory violation is based, at least in part, on the explicit language of that section: there can be no cause of action unless the statute alleged to be violated "secures" an enforceable right. In *Pennhurst*, the Supreme Court held that 42 U.S.C. § 6010, of the Developmentally Disabled Assistance and Bill of Rights Act, created no substantive rights in the mental-

ly retarded and therefore could not form the basis for a section 1983 action. 451 U.S. at 11 & 28 n.21, 101 S.Ct. at 1536 & 1545 n.21. The Court also remanded the case for a determination of whether conditions on the grant of federal funds to the states contained in other sections of the same act created causes of action under § 1983 against states for failing to comply with those conditions. *Id.* at 28–30, 101 S.Ct. at 1545–1546. *See also Dopico v. Goldschmidt,* 518 F.Supp. 1161, 1176 (S.D.N.Y.1981) (holding that § 16 of the Urban Mass Transit Act, § 165(6) of the Federal-Aid Highway Act, and other acts created no substantive rights sufficient to invoke § 1983); *Perry v. Housing Authority of City of Charleston,* 664 F.2d 1210, 1217 (4th Cir. 1981) (holding housing statutes create no rights in tenants for purposes of section 1983). The Court again recognized this exception to statutory liability in *Middlesex County Sewerage,* but did not reach the question in view of its holding under the first exception. 453 U.S. at 19, 101 S.Ct. at 2625–2626.

This court need not decide whether these exceptions apply, given the posture of this case. "[I]t would be ineffectual to require the court to hear the complete litigation on a matter already moot. It is enough to meet the legal requirement to be sure the litigation is not 'frivolous, unreasonable, or groundless....'" *Iranian Students Association v. Sawyer,* 639 F.2d 1160, 1164 n.6 (5th Cir. 1981).

The court cannot be sure that that test is met here. The United States Supreme Court recently stated, in refusing to imply a private right of action under the Davis-Bacon Act, the statute which must secure the "right" here: "Section 1 of the Davis-Bacon Act requires that certain stipulations be placed in federal construction contracts for the benefit of mechanics and laborers, but it does not confer rights directly on those individuals." *Universities Research Association v. Coutu,* 450 U.S. 754, 772, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1980). The lan-

guage of section 1 is directed to federal agencies and does not focus on the benefitted class. *Id.* (citing *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). There is therefore a more than substantial question as to whether section 1 of the Davis-Bacon Act secures a right sufficient to meet the requirements of section 1983. *Cf. Pennhurst,* 451 U.S. at 28, 101 S.Ct. at 1545 ("It is at least an open question whether an individual's interest in having a State provide those 'assurances' is a 'right secured' by the laws of the United States within the meaning of § 1983.").

Further, there is the question of remedy, also recognized in *Pennhurst. Id.* at 29, 101 S.Ct. at 1545–1546. Plaintiff's remedy here may well be limited to relief specifically available under the Davis-Bacon Act or to an injunction prohibiting the federal government from financing the construction project. *Cf. id.* (remanding to consider issue of proper remedy); *Cervantes v. Guerra,* 651 F.2d 974, 977–78 & n.8 (5th Cir. 1981) (raising, in dicta, issue of whether 1983 action against state proper where alternative remedy against federal agency available).

Even if plaintiff were able to successfully traverse these barriers, there would remain an additional preliminary dilemma to resolve. The Supreme Court has apparently never clearly decided the issue of whether the Eleventh Amendment bars the assessment of attorney's fee awards against a state, and therefore presumably against an officer sued in his official capacity, in a case involving no constitutional or civil rights claims. *See Maher v. Gagne,* 448 U.S. 122, 130, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980).

In this court's opinion, the second prong of the *Nadeau* test is also not met in this case. The questions posed here are threshold legal issues that could perhaps even be raised at the outset of the case by a jurisdictional challenge.[2] *See, e.g., Barnson v.*

---

2. The court has not addressed the claims here in jurisdictional terms, although it is clear that 28 U.S.C. § 1343 provides no jurisdiction for

section 1983 claims based solely on statutory non-civil rights violations. *Chapman v. Hous-*

*United States*, 531 F.Supp. 614 (D.Utah 1982). The court cannot conclude that the § 1983 claim presented here is not groundless. Having failed to meet the *Nadeau* test, plaintiff is not a prevailing party on its 1983 claim, and its motion for an award of attorneys' fees from the state defendants under § 1988 is therefore denied.

## III. ATTORNEYS' FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT

Plaintiff seeks an attorneys' fee award against the federal defendants under the Equal Access to Justice Act (EAJA), 28 U.S.C.A. § 2412(d), which states:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C.A. § 2412(d)(1)(A) (Supp.1982). Despite the fact that § 2412(d) only took effect on October 1, 1981, it has already received some interpretation from the courts in varying contexts. *See, e.g., S & H Riggers & Erectors, Inc. v. OSHRC*, 672 F.2d 426 (5th Cir. 1982); *Donovan v. Dillingham*, 668 F.2d 1196 (11th Cir. 1982); *United States for Heydt v. Citizens State Bank*, 668 F.2d 444 (8th Cir. 1982); *Wolverton v. Schweiker*, 533 F.Supp. 420 (D.Idaho 1982); *Photo Data, Inc. v. Sawyer*, 533 F.Supp. 348 (D.D.C.1982); *Berman v. Schweiker*, 531 F.Supp. 1149 (N.D.Ill.1982); *Alspach v. District Director of Internal Revenue*, 527 F.Supp. 225 (D.Md.1981).

■ The initial step[3] in determining plaintiff's qualification for an award against the United States under section 2412(d) is whether they are the prevailing party. The legislative history to the EAJA makes clear that the standards courts have

established to interpret that phrase under other statutes are applicable under the EAJA. H.R.Rep.No.96–1418, 96th Cong., 2d Sess., *reprinted* in [1980] U.S.Code Cong. & Ad.News 4953, 4990 (House Report). Here we have already established that plaintiff received in this lawsuit all the substantive relief it sought in its original complaint. Therefore plaintiff is the prevailing party for purposes of section 2412(d) and is entitled to attorney's fees "unless the position of the United States was substantially justified" or "special circumstances" exist.

The court is aided in its analysis of the first qualification on the award of fees by the early case law. The first issue—what is meant by the "position of the United States"—has been contradictorily addressed and decided by the two district courts in *Photo Data, Inc. v. Sawyer* and *Alspach v. District Director of Internal Revenue. Cf. S & H Riggers*, 672 F.2d 426 (analyzing government's litigation position); *Wolverton*, 533 F.Supp. at 425 (analyzing underlying government action); *Berman*, 531 F.Supp. at 1154 (citing *Alspach* holding that focus is on litigation position). Both courts found that the language and legislative history provide no conclusive answer to the question of whether "position" refers to litigation posture or the underlying action giving rise to the suit. Clearly, the resolution of this question can be very important in a case such as this.

Both of the decisions in *Alspach* and *Photo Data*, in addressing the "position" issue, referred to the parallel language of Rule 37(a)(4), Federal Rules of Civil Procedure, which, in allowing motions for orders compelling discovery, permits the award of fees to the party prevailing on the motion "unless the court finds" that either the non-prevailing party's "*opposition to the motion*" or "*making of the motion*" was substantially justified, as the case may be. (Emphasis added). The court in *Alspach* relied on the express language of Rule

---

*ton Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

**3.** There is no dispute that plaintiff meets the size qualification in section 2412(d)(2)(B)(iii).

37(a)(4) to indicate the focus should be on the litigation of the issue. 527 F.Supp. at 228. The *Photo Data* court quoted the Advisory Committee's Note to the 1970 amendment to Rule 37(a)(4); "[T]his remedy was created 'to deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists.'" 533 F.Supp. at 352 n.7. Analogizing a similar purpose to the EAJA, the court in *Photo Data* held that it "must scrutinize not only the government's theory in defending the legal issues but also the occurrences that impelled plaintiff to bring this action." *Id.* at 352.

This court does not find Rule 37 either to indicate the proper resolution of the issue or to support one view or the other. This particular issue has never arisen under Rule 37 to the court's knowledge, and the reason it hasn't is not complex. The rationale justifying the underlying action is almost always the same as that pressed at the hearing, and the occasion never arises to differentiate between two "positions". Where a party capitulates after a motion is made, mooting the motion, the attitude most often of litigants and courts alike is generally "no harm done," perhaps because courts have a fair amount of discretion under the Rule. *See* Notes of Advisory Committee on Rules, 1970 Amendment to Rule 37(a)(4). The situation can be very different under the EAJA, and the courts' discretion under section 2412(d) is probably quite limited. Rule 37 does not aid the issue for the additional reason that its purposes are not identical to those of the EAJA; the latter is not in any way intended to be penal.

The purpose and structure of the EAJA is dispositive, in this court's opinion. Section 202 of the EAJA, set out as a note to 5 U.S.C.A. § 504 (Supp.1982), describes congressional findings and purposes:

(a) The Congress finds that certain individuals, partnerships, corporations, and labor and other organizations may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights in civil actions and in administrative proceedings.

(b) The Congress further finds that because of the greater resources and expertise of the United States the standard for an award of fees against the United States should be different from the standard governing an award against a private litigant, in certain situations.

(c) It is the purpose of this title ...

(1) to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees, expert witness fees, and other costs against the United States; and

(2) to insure the applicability in actions by or against the United States of the common law and statutory exceptions to the "American rule" respecting the award of attorney fees.

To effectuate these purposes, the EAJA creates a new standard, "not in line with either the common law exceptions to the American rule restricting the award of attorneys' fees, or other statutory standards allowing fee awards in certain cases against the United States." *Berman v. Schweiker*, 531 F.Supp. at 1153–54. The legislative history attempts to detail the new standard in depth, but there are two obviously contesting policies which perhaps account for the ambiguity in question. The two policies have been described as follows:

Although this "public purpose" view of private litigation against the government guided the drafters of the Act, it is manifestly not the sole premise of the legislation, for the Act does not adopt the position that the government should compensate all prevailing parties but instead enacts a compromise position embodied in the standard of "substantial justification:" "This standard balances the constitutional obligation of the executive branch to see that the laws are faithfully executed against the public interest in encouraging parties to vindicate their rights." [House Report] at 10, 1980 U.S. Code Cong. & Ad.News at 4989.

*S & H Riggers*, 672 F.2d at 429–30. The new standard is "intended to serve as a 'middle ground' between an automatic award of fees to a successful party and permitting fees only where the government's position was arbitrary or frivolous." *Berman*, 531 F.Supp. at 1154 (citing House Report at 4993).[4]

If this new standard is not intended to compensate all parties successful in seeking judicial review of agency factual decisions, then it is the litigation posture—the government's pressing of the issue—that must be addressed. Otherwise the underlying action would rarely, if ever, be substantially justified when the government did not prevail. In judicial review of the underlying agency action, the factual standard to be applied will either be whether there is substantial evidence to support the agency decision or whether the action was arbitrary or capricious. See 5 U.S.C. § 706. It is difficult for this court to perceive how action unsupported by "substantial" evidence could be "substantially" justified.

If one looks to the "position of the United States" as its underlying actions, that hairline distinction must necessarily be made. In *Wolverton*, the court took this very approach and recognized the potential dilemma.

As the Secretary points out, a finding that the Secretary's decision was not supported by substantial evidence does not require a concurrent finding by this court that the Secretary's position was not substantially justified. To hold otherwise would mean that EAJA fees were allowable in every case where the court found an absence of substantial evidence, a result certainly not intended by Congress. 533 F.Supp. at 425. The *Wolverton* court awarded attorneys' fees on the basis that there was *no* evidence to support the decision. That approach may prove workable in "substantial evidence review" cases to a limited extent, but what of review under the arbitrary and capricious standard? It practically defies reason to state on the one hand that the underlying agency action is arbitrary and capricious and yet substantially justified. It is at the same time clear that Congress did not intend attorneys' fees to be awarded every time informal rulemaking is set aside.

This court believes the approach of limiting the meaning of "position" to litigation posture is more consonant with the balance proposed and intended by Congress. In a number of cases, the distinction might prove immaterial. If the agency's position underlying the action is without justification, there may very well be no substantially justifiable position to take in the litigation, either factually, or legally. The distinction becomes important in cases like the present one where the agency *changes* its position. Here the defendants capitulated within nine days of the filing of the complaint. The defendants' actions in this lawsuit have not only been reasonable, but laudable. This is not a case where the

---

**4.** The new standard's delicate balance is most obvious in the EAJA's treatment of fees incurred at the administrative level. Section 203, codified at 5 U.S.C.A. § 504 (Supp.1982), provides for a fees award but only in adjudications where the United States is an adversary. Thus, to create a hypothetical case, suppose a small business were to seek relief from the Department of Energy under its regulations. If the business were to prevail, it would not be awarded fees under the EAJA. If the agency were to deny relief, the business might appeal to the Federal Energy Regulatory Commission (FERC), where the agency would become the adverse party. If the business were to prevail before FERC and the Agency's position *in the adversary proceeding* were not substantially justified, it would appear that FERC would award fees incurred in connection with the proceeding before it, but not for the proceedings before the agency. *Cf. Wolverton v. Schweiker*, 533 F.Supp. at 424 (proceeding before defendant not adversary adjudication; no fees allowed for those proceedings); *Berman*, 531 F.Supp. at 1153 (administrative level social security proceeding not covered by EAJA because agency takes no position represented by counsel). Were the business not to prevail before FERC and appeal to a federal district court and prevail, it might qualify for fees incurred before FERC and the court, but not those incurred before the agency. *See* 28 U.S. C.A. § 2412(d)(3) (Supp.1982). In essence, the factor distinguishing parties entitled to fees and those not entitled, at the administrative level, is whether the agency "takes a *position through counsel*." *Berman*, 531 F.Supp. at 1153 (emphasis added).

"greater resources and expertise of the United States" have been brought to bear against a private litigant.[5] EAJA § 202, 5 U.S.C.A. § 504 note (Supp.1982). On the contrary, defendants' actions were commendable in conceding a case where plaintiff was clearly wronged, even though the lawsuit against the named defendants might have been contested. The government's action exemplifies the behavior the EAJA seeks to encourage.

The legislative history also supports, albeit inconclusively, the court's determination here that position refers to litigation. Some language seems to indicate that the drafters were looking to the government's litigation posture:

> The test of whether or not a *government action* is substantially justified is essentially one of reasonableness. Where the Government can show that *its case had a reasonable basis both in law and fact*, no award will be made. . . .

> Certain types of case dispositions may indicate that the Government action was not substantially justified. A court should look closely at cases, for example, where there has been a judgment on the pleadings or where there is a directed verdict or where a prior suit on the same claim had been dismissed. Such cases clearly raise the possibility that the Government was *unreasonable in pursuing the litigation.*

> The standard, however, should not be read to raise a presumption that the government position was not substantially justified, *simply because it lost the case.* Nor, in fact does the standard require the Government to establish that its *decision to litigate* was based on a substantial probability of prevailing.

House Report at 4989–90 (emphasis added). While the focus of this language is clear, the repeated ambiguous references in the history to "government action" make this language less than conclusive.

■ Based on the above authority, the court holds that what must be found to be substantially justified is the government's position, through counsel, in the context of the adversarial proceeding. This does not mean that section 2412 provides no relief when the government acts with impunity until one files suit against it. Section 2412(b) makes the government liable for fees to the same extent that any other party would be liable under statute or common law. If 2412(b) is to have any effect under the common law bad faith exception to the American rule that no fees may be awarded, in light of 2412(d)'s lesser standard, it may be that a court could consider the government action giving rise to the suit under the bad faith standard. The bad faith basis for an award could be adequate protection for the infrequent occasions where the government fails to act properly until a lawsuit is filed.

Under the facts of this case, the court finds that the government's position was substantially justified. Once this action was filed, the government acted almost immediately to concede all the substantive relief plaintiff sought. Further, it finds the facts of the case to show no bad faith in the actions of any of the defendants either before or after the lawsuit was filed. Because of the court's holding on these issues, it need not address the other issues raised by the parties.

Accordingly,

IT IS ORDERED that defendants' motions for summary judgment be granted. Plaintiff's motion for attorneys' fees is denied. The federal defendants' attorneys are to prepare an appropriate judgment and order in accordance with this decision.

---

**5.** Certainly the defendants' litigation posture cannot have necessitated plaintiff's expenditure for attorneys' fees in the "lodestar" amount of nearly $55,000.