**DOUGHERTY, Gregory, Appellant,**

v.

**LEHMAN, John, Secretary of the Navy, Appellee.**

**DOUGHERTY, Gregory, Appellee,**

v.

**LEHMAN, John, Secretary of the Navy Appellant.**

Nos. 82–1360, 82–1418.

United States Court of Appeals, Third Circuit.

Argued Jan. 25, 1983.

Decided June 30, 1983.

Christopher F. Stouffer (argued), Hepburn, Willcox, Hamilton & Putnam, Philadelphia, Pa., for Dougherty.

Peter F. Vaira, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Edward F. Borden, Jr. (argued), Asst. U.S. Atty., Philadelphia, Pa., for Lehman.

Before SEITZ, Chief Judge, and ADAMS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

Gregory J. Dougherty (Dougherty) and John F. Lehman, Secretary of the Navy ("Secretary") appeal from orders of the United States District Court for the Eastern District of Pennsylvania, filed May 12 and July 9, 1982, granting, in part, Dougherty's petition for an award of attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (Supp. IV 1980). Dougherty contends that the district court abused its discretion by granting him an award of $2,130.37, rather than the $14,197.50 Dougherty had sought. The Secretary, on the other hand, contends that the district court erred, as a matter of law, in awarding Dougherty attorney's fees at all.

We dismiss Dougherty's appeal for lack of jurisdiction. Further, we hold that the Secretary, even though not succeeding in full on the merits, was "substantially justified" in opposing Dougherty's claim. We, therefore, reverse the district court's order granting Dougherty attorney's fees.

### I.

On November 22, 1980, when Dougherty was in his final year at the United States Naval Academy ("Academy"), he and four other male midshipmen engaged in sexual relations with a female midshipman in Dougherty's room, in violation of Academy disciplinary rules. As a result of this incident, the Academy filed charges against Dougherty. After consulting with his military counsel, Dougherty waived his right to an Administrative Conduct Hearing and, on December 3, 1980 pleaded guilty to charges of conduct unbefitting an officer of the Naval Service and of aiding, counseling, and procuring the commission of an offense. *Dougherty v. Lehman,* 688 F.2d 158, 159 (3d Cir.1982).

By an order dated January 14, 1981, the Secretary discharged Dougherty, as well as another male midshipman also involved in the incident, from the Academy. The Secretary further ordered both men to report to the United States Naval Base in Washington, D.C. by 9 A.M., January 15, 1981 for assignment to the fleet as enlisted men (App. at 4), for a period of three years. The woman involved was allowed to resign without an active duty order. The remaining male midshipmen were permitted to remain at the Academy, but were otherwise disciplined. *Id.,* 688 F.2d at 160.

On January 14, 1981, hours before Dougherty was required to report for active duty, Dougherty filed suit in the United States District Court for the Eastern District of Pennsylvania seeking a temporary restraining order and injunctive relief alleging a violation of his constitutional due process rights, as well as a failure to follow the statutory requirements attending discharge. Following trial on June 2, 1981, the district court upheld the Secretary's right to discharge Dougherty from the Academy.[1] The court, however, enjoined the Secretary from ordering Dougherty to active duty. An appeal from the Secretary followed, and this court affirmed the district court, but on different grounds. *Dougherty v. Lehman, supra,* 688 F.2d 158, 161 n. 2. Neither the district court nor this court, when it reviewed the district court's actions, reached

---

1. Dougherty did not appeal this ruling. *Dougherty v. Lehman,* 688 F.2d 158, 160 & n. 1 (3d Cir.1982).

Dougherty's constitutional claim. Rather, the disposition in both courts rested on statutory grounds, albeit on different theories.

### A.

On December 29, 1981, Dougherty submitted a fee petition which had been amended to include details of time and costs. This schedule was prepared, in part, from attorney Malloy's reconstructed time records.[2] It recited an aggregate of 167.9 hours expended by these attorneys over the course of the proceeding and sought $14,-197.50.

By Memorandum Opinion and Order filed May 12, 1982 the district court granted Dougherty's motion but reduced the amount claimed to an award of $2,130.37 in total. First, the district court held that the provisions of the Equal Access to Justice Act were applicable because Dougherty's case was "pending" on October 1, 1981.[3] *See* P.L. 96–481, 94 Stat. 2330, § 208.[4] The court also found that Dougherty was a prevailing party within the meaning of the Act.

The district court, following the procedures established in *Lindy I,* and *Lindy II,*[5] then examined the time sheets of the attorneys and reduced the time allowable to Malloy to 25.3 hours. Stouffer's allowable time was reduced to 9.2 hours. The district court disallowed payment for the services of a third attorney. Out-of-pocket costs were disallowed because "the itemization does not show that the costs were directly related to the prevailing issue." The court then further reduced the award by 25% because of its estimate of the quality of the attorney's work product.

On May 17, 1982 the Secretary filed a motion for reconsideration, arguing that reconsideration was necessary primarily because the Secretary's position was "substantially justified," within the meaning of the EAJA, 28 U.S.C. § 2412. However, before the court ruled on the Secretary's reconsideration motion, Dougherty, on June 7, 1982, filed a notice of appeal from the May 12, 1982 order.

On June 9, 1982, the district court filed a supplemental decision affirming its Order of May 12, 1982. The court found that the Secretary had failed to meet its burden of proving that its position was substantially justified, as required under the Act. Thereafter, on July 9, 1982, the Secretary filed his notice of "cross-appeal."

### II.

On appeal, Dougherty argues that the district court abused its discretion in setting the amount of attorney's fees and costs to be awarded Dougherty, and that the court's calculation of the amount of the fees was arbitrary and contrary to the law of this circuit. We do not reach the merits of this argument. Because the only notice of appeal that Dougherty filed, was filed from the May 12, 1982 order, and because that order was not appealable once a motion for reconsideration was properly filed, Dougherty's notice of appeal with respect to the May 12 order must, therefore, be deemed a nullity. *Griggs v. Provident Consumer Discount Co.,* —— U.S. ——, 103

---

**2.** Counsel for Dougherty were Joseph Malloy, Jr. and Christopher Stouffer. Malloy died on September 18, 1981. Stouffer thereafter filed a petition for an award of attorney's fees and costs.

**3.** The Secretary's appeal on the merits had been decided by this court on August 26, 1982. Thus, the attorney's fees application was brought after the district court's disposition but before disposition by this court.

**4.** Section 208 provides that:
This title and the amendments made by this title shall take effect of October 1, 1981, and shall apply to any adversary adjudication, as defined in section 504(b)(1)(C) of title 5. United States Code, and any civil action or adversary adjudication described in section 2412 of title 28, United States Code, which is *pending on, or commenced on or after, such date.*
Equal Access to Justice Act of 1980, Pub.L. No. 96–481, § 208, 94 Stat. 2325, 2330 (emphasis supplied).

**5.** *Lindy Brothers Builders v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) (*Lindy II*); *Lindy Brothers Builders v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) (*Lindy I*).

S.Ct. 400, 403, 74 L.Ed.2d 225 (1982); *see* Fed.R.App.P. 4(a)(4) (1982). Because Dougherty did not file a timely notice of appeal after the district court's June 9, 1982 order was filed, we lack jurisdiction over Dougherty's appeal.

### A.

Prior to the Supreme Court's decision in *Griggs, supra,* this court had interpreted Fed.R.App.P. 4(a)(4)[6] to deny jurisdiction only where an appellee could demonstrate that the premature filing of a notice of appeal by the appellant resulted in prejudice to the appellee. *See Richerson v. Jones,* 572 F.2d 89 (3d Cir.1978); *cf. Cape May Greene, Inc. v. Warren,* 698 F.2d 179 (3d Cir.1983). Indeed, this court reiterated this construction of Fed.R.App.P. 4(a)(4) in *Griggs v. Provident Consumer Discount Corp.,* 680 F.2d 927 (3d Cir.) rev'd —— U.S. ——, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). In that case we accepted jurisdiction despite the fact that the appellant had filed his notice of appeal while a Motion for Reconsideration and a Motion to Alter, Amend and Vacate Judgment (Fed.R.Civ.P. 59(e)) was pending before the district court. *Id.,* 680 F.2d at 929–30. We concluded that the appellant's notice of appeal had been prematurely filed under Rule 4(a)(4), "but though a premature notice of appeal is subject to dismissal, we have generally allowed appellant to proceed unless the appellee can show prejudice resulting from the premature filing of the notice. [citations]. . . . In our case, the Griggses have shown no prejudice by the premature filing of a notice of appeal." *Id.,* 680 F.2d at 929, n. 2; *see* discussion in *Griggs, supra,* 103 S.Ct. at 402–03; *Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 882 n. 2 (3d Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981); *Hodge v. Hodge,* 507 F.2d 87, 89 (3d Cir.1975).

In reversing this court's judgment in *Griggs, supra,* the Supreme Court emphasized that, after the 1979 Amendments to the Rules, it was no longer permissible for the district court to retain jurisdiction to decide post trial motions after a notice of appeal was filed because of the very real danger that both the district court and the court of appeals would have the power to modify the same judgment simultaneously. It noted that the "1979 Amendments avoided that potential conflict by depriving the courts of appeals of jurisdiction in such situations." *Griggs, supra,* 103 S.Ct. at 403. The Supreme Court, therefore, held that a notice of appeal filed during the pendency of a Rule 59 motion "was not merely defective; it was a nullity," *Id.* 103 S.Ct. at 403–04. This interpretation of Rule 4(a)(4), the Supreme Court reasoned, was consonant with the purposes underlying the amendment of the rule.

> Under the plain language of the current rule, a premature notice of appeal 'shall have no effect'; a new notice of appeal 'must be filed.' In short, it is as if no notice of appeal were filed at all. And if no notice of appeal is filed at all, the Court of Appeals lacks jurisdiction to act. It is well settled that the requirement of a timely notice of appeal is 'mandatory and jurisdictional.'

*Id.* 103 S.Ct. at 403. *See also* 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 204.12[1], at 4–65 n. 17 (2d ed. 1982) (effect of a Rule 59 motion on a previously filed notice of appeal: "the appeal simply self-destructs."). On remand from the Supreme Court, this court conformed to the Supreme Court's instruction and dismissed Provident's appeal. *Griggs v. Provident Consumer Discount Co.,* 699 F.2d 642 (3d Cir.1983) (on remand).

---

**6.** Fed.R.App.P. 4(a)(4) provides in relevant part:

> If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party . . . under Rule 59 . . . , the time for appeal for all parties shall run from the entry of the order . . . granting or denying . . . such motion. *A notice of appeal filed before the disposition of [such motion] shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above. No additional fees shall be required for such filing.*

Fed.R.App.P. 4(a)(4) (1982) (emphasis supplied).

### B.

In the instant case, the district court filed its order granting Dougherty his petition for fees in the amount of $2,130.37 on May 12, 1982. On May 17, the Secretary filed a motion for reconsideration pursuant to Fed.R.Civ.P. 59(e). Thereafter, while decision on the Secretary's motion was still pending, Dougherty, on June 7, 1982, filed a notice of appeal from the May 12, 1982 order. Subsequently, on June 9, 1982, the district court denied the Secretary's motion. Since the Secretary's motion for reconsideration was pending at the time Dougherty filed his notice of appeal, and no notice of appeal was filed by Dougherty after the district court's ruling, it is clear that, under *Griggs, supra,* and Fed.R.App.P. 4(a)(4), Dougherty's June 7, 1982 notice can not be given effect. Accordingly, Dougherty's appeal must be dismissed.[7]

### III.

■ Under the EAJA, in any civil action brought by or against the United States, a district court must award attorney's fees and other costs to the prevailing party (other than the United States), unless the court finds that the government has carried its burden of showing that its position was "substantially justified," or that special circumstances make an award unjust.[8] Thus, in deciding whether to award fees under the EAJA the district court must determine

which party prevailed, whether the government has carried its requisite burden, and accordingly, whether "substantial justification" for the government's position has been demonstrated.[9] *See generally National Resource Defense Council, Inc. v. EPA,* 703 F.2d 700 (3d Cir.1983).

### A.

Here, the district court first determined that Dougherty was not a "prevailing party" within the meaning of the EAJA in his action to enjoin his expulsion from the Naval Academy. Therefore, the court reasoned, he was not entitled to fees and expenses connected to the litigation of that claim. However, the court found that Dougherty was "entitled to recover a reasonable attorney's fee . . . for legal services rendered in connection with his claim that the Secretary . . . could not legally require him to report for active duty since that [was] the . . . issue on which he had prevailed." Memorandum and Order filed May 12, 1982.[10] In essence, the district court held that apportionment among claims was proper under the EAJA, thus anticipating our subsequent holding to that effect in *Goldhaber v. Foley,* 698 F.2d 193, 197–98 (3d Cir.1983); *cf. Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (same, in a 42 U.S.C. § 1988 (Supp. IV 1980) context).

---

**7.** The Secretary's appeal, filed on July 9, 1982, although denominated a cross-appeal, was timely filed after the district court's June 9, 1982 order and permits us to review the Secretary's claim.

**8.** The EAJA states in pertinent part that:
   Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
   28 U.S.C. 2412(d)(1)(A) (Supp. IV 1980). Congress also required that the government meet

the burden of proving "substantial justification." See III. B. *infra.*

**9.** No issue is involved in this case as to whether "special circumstances" would make an award unjust.

**10.** Dougherty brought his fee petition pursuant to 42 U.S.C. § 1988 which provides for attorney's fees to the prevailing party where enforcement of particular statutes are involved. Dougherty at no time, however, alleged violation of any of the statutes enumerated in 42 U.S.C. § 1988. The district court construed Dougherty's petition as seeking fees under 28 U.S.C. § 2412. Neither party has contested this characterization, and indeed, on appeal both parties have addressed only the EAJA. 28 U.S.C. § 2412. We confine ourselves to that analysis.

The district court, however, made no determination in its May 12, 1982 Memorandum and Order as to whether the Secretary had been "substantially justified" in opposing Dougherty's claim that Dougherty could not be required to report for active duty. In its opinion of June 9, 1982, the district court addressed this issue. In that opinion it properly held that the burden of proving "substantial justification" rested on the government. However, the district court then concluded that the government had failed to carry this burden. Thereupon, the district court affirmed its earlier order granting fees to Dougherty in the sum of $2130.37. We disagree.

### B.

The legislative history of the EAJA makes plain that Congress intended that the government have the burden of proving that its action giving rise to the litigation was substantially justified.

> [T]he strong deterrents to contesting Government action require that the burden of proof rest with the Government. This allocation of the burden, in fact, reflects a general tendency to place the burden of proof on the party who has readier access to and knowledge of the facts in question. The committee believes that it is far easier for the Government, which has control of the evidence, to prove the reasonableness of its action than it is for a private party to marshall the facts to prove that the Government was unreasonable.

H.R. No. 1418, 96th Cong.2d Sess., at 10, *reprinted in* 1980 U.S.Code Cong. & Ad. News, at 4953, 4989 (hereinafter House Report); *see also* S.Rep. No. 96–253, 96th Cong., 1st Sess., 1, 6 (1979) (the government must "prove the reasonableness of its action" since it has control of the evidence) (hereinafter Senate Report); *Natural Resources Defense Council, supra,* 703 F.2d at 711; *S & H Riggers & Erectors, Inc. v. OSHRC,* 672 F.2d 426, 430 (5th Cir.1982); *Moholland v. Schweiker,* 546 F.Supp. 383, 386 (D.N.H.1982); *Nunes-Correia v. Haig,* 543 F.Supp. 812, 817 (D.D.C.1982); *Photo*

*Data, Inc. v. Sawyer,* 533 F.Supp. 348, 351–52 (D.D.C.1982). The district court, as we have noted, was thus justified in placing the burden of proving "substantial justification" on the government.

However, in its assessment of whether the government carried its requisite burden, the district court erred by imposing too great a burden of proof on the government. Although the EAJA does not define the manner in which the government's burden of proof must be met, the legislative history reflects a Congressional intent that:

> The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made. In this regard, the strong deterrents to contesting Government action require that the burden of proof rest with the Government.

House Report, *supra* at 10, U.S.Code Cong. & Ad.News 1980, at 4989.

Nothing in the Act or its legislative history requires that independent or separate evidence—distinct from the record of proceedings on the merits—is required in order to satisfy the government's burden of proof. Indeed it might be difficult to define what manner of independent proof, apart from the record as developed in the course of the litigation would be required to support the government's statutory burden of "substantial justification."

The district court, however, apparently contemplated that more than just the merits record had to be produced and scrutinized in order to determine whether the government's burden was met. The brief June 9, 1982 memorandum opinion of the district court, after reciting the relevant section of the House Report, concludes with the equivocal statement: "Neither the brief, nor any of the pleadings, contain *any evidence* from which the court can conclude that defendants [sic] have met the burden of proof under this Act, that the factual and legal basis for their [sic] position was substantially justified." (emphasis sup-

plied). We cannot agree with the district court's conclusion.

■ While the arguments of the parties, and any evidence introduced in the fees action, such as affidavits, must be carefully considered, it is essentially the relevant portions of the record in the underlying action which must be looked to in order to determine if the government has proved "substantial justification" for its position. *See e.g., S & H Riggers, supra,* 672 F.2d at 430; *Spencer v. NLRB,* 548 F.Supp. 256, 262 (D.D.C.1982).

Thus, courts reviewing EAJA petitions for attorney's fees have based their determinations of "substantial justification" on the factors and reasoning found in the merits opinions of the district courts, as well as on an examination of the relevant documents filed by the parties at every stage of the litigation. *See Spencer, supra,* 548 F.Supp. at 262–64; *Moholland, supra,* 546 F.Supp. at 386; *Nunes-Correia, supra,* 543 F.Supp. at 818–819; *Wolverton v. Schweiker,* 533 F.Supp. 420, 425 (D.Idaho 1982); *Photo Data, Inc., supra,* 533 F.Supp. at 352. Courts have also relied upon decisions rendered in appellate proceedings in the underlying case on the merits. *See S & H Riggers, supra,* 672 F.2d at 430–31. Finally, courts have reviewed the actions taken by the government after legal proceedings had commenced, to the extent that these actions might bear on the question of substantial justification. *See Operating Engineers Local Union No. 3 v. Bohn,* 541 F.Supp. 486, 496 (D.Utah 1982). Accordingly, to the extent that the district court's reference in its June 9, 1982 opinion to "evidence" may be construed as requiring separate, distinct, or independent "evidence" of "substantial justification," we reject such a requirement. As we discuss in a later portion of this opinion, it is sufficient if the record developed in the merits proceedings reveals that the government's position had a "reasonable basis both in law and fact."

■ Therefore we hold that the district court erred by requiring more than this of the government. Because a reasonable basis in law and fact can be demonstrated by no more than the underlying record on the merits, careful review of that record is all that is required to make a just determination as to whether the government has met its burden of showing "substantial justification."[11] Ordinarily, we would remand this case for the district court to determine whether the government met its burden of proof as we have explained that burden in this opinion. However, because we believe that it would be an abuse of discretion for the district court to hold that the government had failed to show that it was "substantially justified," we will reach the merits of this issue.

## C.

■ As we stated in *Goldhaber, supra,* 698 F.2d at 195, the EAJA was enacted to "remove an obstacle to contesting unreasonable governmental action through litigation" posed by the expense involved in securing the vindication of a party's rights in the courts. The EAJA therefore provided for an award of attorney's fees and expenses to parties prevailing against the United States. See House Report, *supra,* at 5, 9, 1980 U.S.Code Cong. & Admin.News, at 4984, 4988. Congress, however, did not intend to award fees to every prevailing party against the United States through the EAJA. Rather, Congress authorized only "certain prevailing parties" to recover fees. House Report, *supra,* at 6, 1980 U.S.Code Cong. & Ad.News, at 4984. Specifically, Congress required that attorney's fees be awarded to a prevailing party unless the court determines that the government's position was not "substantially justified."

Nor did Congress leave the term "substantial justification" unexplained. Indeed,

11. We do not here imply that the government will be able to rely exclusively on such a record in every case. The government always runs the risk that the record developed in the underlying case on the merits will be insufficient for it to carry its burden of proving "substantial justification." *See Natural Resources Defense Council v. EPA, supra,* 703 F.2d 700 (3d Cir. 1983).

the legislative history of the EAJA attempted to explore the nature of the "substantial justification" limitation which controlled the award of attorney's fees under the EAJA. Starting from the premise that the government will not be assessed for awards where its (the government's) case has a "reasonable basis both in law and fact," the House Report continued:

Certain types of case dispositions may indicate that the Government action was not substantially justified. A court should look closely at cases, for example, where there has been a judgment on the pleadings or where there is a directed verdict or where a prior suit on the same claim had been dismissed. Such cases clearly raise the possibility that the Government was unreasonable in pursuing the litigation.

The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because the Government lost the case. *Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.* Furthermore, the Government should not be held liable where "special circumstances would make an award unjust." This "safety valve" helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.

House Report, *supra,* at 10–11, 1980 U.S. Code Cong. & Ad.News, at 4989–90 (emphasis supplied).

While the application of the facts and law of a particular case to the statutory standard of "substantial justification" is not easily made, and courts have disagreed when called upon to review district court determinations in this respect, at least in this Circuit the *standard* by which fee awards against the Government have been measured is not subject to dispute. In *Natural Resources Defense Council, supra,* the most recent authority of this court discussing the EAJA, although the members of that panel were in disagreement as to the interpretation of other aspects of the EAJA, all members of the court were in agreement that the "substantial justification" standard constituted a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous. *See Natural Resources Defense Council, supra,* 703 F.2d at 708, 711 (opinion announcing the judgment of the court); *id.* at 714–15 (concurring opinion); *id.* at 719 (concurring and dissenting opinion).[12]

From the legislative history and the cases construing that legislation to date, we have been instructed that the standard prescribed essentially is one of reasonableness,[13] not in terms of result, but in terms of whether the government's position, even though unsuccessfully taken, had a "reasonable basis both in law and fact." *Natural*

---

**12.** Judge Gibbons' opinion announcing the judgment of the court, in which district court Judge Thompson concurred, held, among other things, that both pre- and post-complaint conduct of the government was to be scrutinized, that agency action as well as court action was to be considered, and that the government's conduct in that case was not "substantially justified." Judge Hunter, in dissent, would have held that the term "position" refers only to the government's litigation or post-complaint position, and that the government's position was "substantially justified." *See Natural Resources Defense Council, supra,* 703 F.2d at 717 (concurring and dissenting opinion).

**13.** *But see* Judge Hunter's dissent in *Natural Resource Defense Council* where he noted:

Not wishing to quibble with the language that the test is "essentially one of reasonableness," I nonetheless note that the test appears to be slightly above reasonableness. The Senate Judiciary Committee refused to lighten the government's burden by refusing to change the language of the bill from "substantially justified" to "reasonably justified." Senate Report, *supra,* at 8; *see Wolverton v. Schweiker,* 533 F.Supp. at 424.

*Natural Resources Defense Council, supra,* 703 F.2d at 721 & n. 7 (concurring and dissenting opinion).

*Resource Defense Council, supra,* 703 F.2d 700; *see S & H Riggers & Erectors, supra,* 672 F.2d at 429–30; *Spencer v. NLRB, supra,* 548 F.Supp. at 261; *Operating Engineers Local Union No. 3, supra,* 541 F.Supp. at 494–95; *Wolverton v. Schweiker, supra,* 533 F.Supp. at 425; *Berman v. Schweiker,* 531 F.Supp. 1149, 1154 (N.D.Ill.1982).

▮▮▮▮ The precedents and legislative history reflecting this standard and this interpretation are discussed in *Natural Resource Defense Council, supra,* and we see no reason to repeat that discussion here. Suffice it to say, from those teachings, we are satisfied that for the government to show that its position had a "reasonable basis in both law and fact" it must:

First, show that there is a reasonable basis in truth for the facts alleged in the pleadings. If no such basis for the government's factual allegations exist, then the government's position may well be held not to be "substantially justified."

Second, the government must show that there exists a reasonable basis in law for the theory which it propounds. This is not to say that the government need demonstrate that there is a substantial probability that the legal theory advanced by it will succeed. See House Report, *supra,* at 11, 1980 U.S.Code Cong. & Ad.News, at 4490.

Finally, the government must show that the facts alleged will reasonably support the legal theory advanced.[14] Thus, having met these requirements, if the government's legal theory, as applied to the facts, reasonably supports the Secretary's position, even though the government may not have ultimately prevailed, then the government will have proven that the "position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A).

### D.

▮▮▮ Applying the above standard to the present controversy, we conclude that the

district court erred in determining that the Secretary's position was not "substantially justified." A review of the record on the merits reveals that the facts alleged by the Secretary in his pleadings had a reasonable basis in truth, that the Secretary's interpretation of the law had a reasonable basis in theory, and that the facts alleged supported the legal theory advanced.

### 1.

It is clear that the Secretary's actions in this case had a reasonable basis in fact. Indeed there was little dispute about the facts involved. *See Dougherty v. Lehman, supra,* 688 F.2d at 159.

Dougherty had pleaded guilty to charges of conduct unbecoming an officer of the Naval Service and of aiding, counseling, and procuring the commission of an offense. *See Dougherty v. Lehman, supra,* 688 F.2d at 159. Dougherty did not deny that he had been involved in the incident of November 22, 1980. *See* Memorandum Opinion and Order, *Dougherty v. Lehman,* filed February 13, 1981. App. at 48. The Secretary discharged Dougherty from the Naval Academy and ordered Dougherty and a fellow midshipman to active duty as enlisted men on the basis of their involvement in the November 22 incident.

Further, Dougherty had not been the first midshipman ever to be ordered to the fleet for active duty upon his discharge from the Academy. The Secretary, thus, did not seek to assert a new interpretation of the extent of his authority. Rather, the Secretary applied a long standing interpretation of his authority under the statutes and the regulations when he fashioned his active duty order in this case. *See Dougherty v. Lehman, supra,* 688 F.2d at 164 & n. 7; Department of Defense Directive 1332.-32 ¶ V.A.2; Bureau of Naval Personnel Manual, art. 3850400, ¶¶ 3, 6.b(4), 7.d.[15] In

---

**14.** This case does not present a situation where the government presents multiple defenses to a claim, some of which are substantially justified, and some of which are not. *See Goldhaber v. Foley,* 698 F.2d 193, 197–98 (3d Cir.1983).

**15.** Paragraph 7.d of art. 3850400 of the Bureau of Naval Personnel Manual provides, in part, that "the period of active enlisted service will normally be as follows: ... (2) Three years when disenrollment occurs after commence-

light of the facts known to the Secretary in this case, and his prior application of the governing regulations to cases of discharge from the Naval Academy, the Secretary's action—ordering Dougherty to report for active duty as an enlisted man—cannot be appropriately characterized as other than having a reasonable basis in fact.

2.

Turning to the second part of the "substantial justification" test, an examination of the proceedings in the district court, and on appeal, clearly reveals that the Secretary's position also had a reasonable basis in law. The Secretary, in defending the legality of his action, has consistently relied on Naval regulations in interpreting 10 U.S.C. § 6959 (1976), the statutory basis of the Secretary's power to impose the active duty requirement.[16] On the basis of that provision, the Secretary asserted that he had the power to order Dougherty to active duty upon his discharge from the Naval Academy, whether or not Dougherty willfully provoked that discharge.[17]

Despite this assertion of authority by the Secretary, the district court disagreed with the Secretary's interpretation of the statute and regulations in their application to

Dougherty's case. Rather, the district court noted that the Secretary could impose the active duty requirement only in the face of a willful violation of the agreement required of every midshipman under 10 U.S.C. § 6959(a). The district court, however, did not base its order on this aspect of statutory interpretation, but granted Dougherty's motion for a permanent injunction based on the fact that the Secretary had failed to produce Dougherty's 10 U.S.C. § 6959(a) agreement in court.[18] *See* Memorandum and Order, filed July 8, 1981, App. at 61.

On appeal, the Secretary continued to press his assertion that 10 U.S.C. § 6959 gave him the authority to order Dougherty to active duty. *Dougherty v. Lehman, supra,* 688 F.2d at 164–65. This Court affirmed the order of the district court, but on completely different grounds. After extensive review of the legislative history of 10 U.S.C. § 6959, we held that the Secretary had no authority to order midshipmen to active duty once a midshipman was separated from the Naval Academy by action of the Secretary. *Id.* at 164. We accordingly rejected the Secretary's legal argument that 10 U.S.C. § 6959(a)'s "sooner separated" clause must be construed to mean sepa-

---

ment of the First Class Academic Year but prior to completion of the course of instruction." *See* Defendant's Memorandum Regarding Active Duty Obligations of Disenrolled Midshipmen, Admission of Evidence of Routine Practice, and Available Remedy, filed June 5, 1981, in the underlying case on the merits, *Dougherty v. Lehman,* Civil Action No. 81–0145, at 2–3 [hereinafter "Active Duty Memo"].

**16.** 10 U.S.C. § 6959 provides in relevant part that:

(a) Each midshipman ... shall sign an agreement that, unless sooner separated, he will—

(1) complete the course of instruction at the Naval Academy....

(b) A midshipman who does not fulfill his agreement under subsection (a) may be transferred by the Secretary of the Navy to the Naval Reserve or the Marine Corps Reserve in an appropriate enlisted grade or rating, and, notwithstanding section 651 of this title, may be ordered to active duty to serve in that grade or rating for such period of time as the Secretary prescribes but not for more than four years.

10 U.S.C. § 6959 (1976).

**17.** See Memorandum Opinion and Order, filed February 13, 1981, App. 44, 48, granting Dougherty's motion for a preliminary injunction in connection with the active duty order; Active Duty Memo, *supra,* at 2–4; Memorandum Opinion and Order, filed July 8, 1981, App. 55–63, permanently enjoining the Secretary from enforcing his active duty orders.

**18.** This agreement, required of every midshipman upon enrollment at the Academy, provides that, unless sooner separated, the midshipman will complete the course of instruction at the Naval Academy, accept an appointment and serve as a commissioned officer for at least five years after graduation, and accept an appointment as a commissioned officer in the Reserves if he is not appointed in the regular component of the armed services. The midshipman also agrees that failure to comply will subject him to transferral to an appropriate Reserve Unit in an enlisted grade, or subject him to active duty in that enlisted grade. *See* 10 U.S.C. § 6959.

ration from the Naval Service.[19] But in so doing, the theory on which the district court relied was also rejected.

Indeed, a reading of this court's decision in *Dougherty v. Lehman, supra,* 688 F.2d 159, makes it clear that the Secretary's interpretation of his power under 10 U.S.C. § 6959—an interpretation to which at least one other court has agreed, *see Green v. Lehman,* 544 F.Supp. 260, 264 (D.Md.1982) —presented an exceedingly close question of law. Furthermore, even though this court denied the Secretary's Petition for Rehearing *in banc,* which had been filed on October 12, 1982, the arguments and precedents therein cited make a strong case for his interpretation of the statute, regulations, and his authority—thus, his "position."

We acknowledge that the Secretary's interpretation was ultimately rejected. Such a rejection, however, is not enough to support Dougherty's argument that the Government's position was, as a consequence, not "substantially justified." Congress has made it quite evident that the "substantial justification" standard "should not be read to raise a presumption that the government was not substantially justified, simply because it lost the case." House Report, *supra,* at 11, 1980 U.S.Code Cong. & Ad.News, at 4990.

### 3.

We are satisfied, from our review of all the underlying proceedings, that the Secre-

tary's position—that he had authority to order Dougherty to active duty—had a "reasonable basis both in law and fact," and that, without more, the Secretary has made the "strong showing" of "substantial justification" required to meet his statutory burden of proof. *Natural Resources Defense Council, supra,* 703 F.2d at 712. It follows, of course, that the district court erred in concluding otherwise. As a consequence, Dougherty is not entitled to attorney's fees and other costs under the EAJA, 28 U.S.C. § 2412(d)(1)(A).[20]

### IV.

Dougherty's appeal at No. 82–1360 will be dismissed for lack of jurisdiction.[21] The June 9, 1982 order of the district court from which the Secretary's appeal, at No. 82–1418 was taken, and which order granted, in part, Dougherty's petition for attorney's fees and costs, will be reversed and remanded with directions to the district court to vacate its June 9, 1982 order and to deny Dougherty's petition for fees and costs.

---

**19.** This court explained that:
> [T]he agreement to "complete the course of instruction at the Naval Academy" is subject to the express condition that the midshipman not be "sooner separated," that is, discharged or dismissed, from the Academy prior to the completion of the course.

*Dougherty v. Lehman, supra,* 688 F.2d at 161.

**20.** On appeal, the Secretary also argues that the district court erred by awarding fees in this case because Dougherty's action had not been "pending" on October 1, 1981, the effective date of the EAJA. While no need exists here to consider this argument in light of our disposition, we note that in any event this issue has been addressed in *Natural Resources Defense Council, supra,* 703 F.2d at 712–13, where we held that fees may be awarded for services performed prior to the effective date of the EAJA as long as the case was pending on

October 1, 1981, that is, where the case was still before the courts. *See id.* at 712.

**21.** Having held that the Secretary's position was substantially justified, it is evident that even if we were not required to dismiss Dougherty's appeal, Dougherty would not be entitled to any attorney's fees. Were it otherwise, and with recognition that Dougherty may have relied upon the principle that premature notices of appeal could be given effect, *see Richerson v. Jones,* 551 F.2d 918, 922 (3d Cir.1977), *see also Cape May Greene, Inc. v. Charles S. Warren,* 698 F.2d 179, 184–85 (3d Cir.1983), and could not have foreseen the Supreme Court's holding in *Griggs,* we might have directed Dougherty's attention to Fed.R.Civ.P. 60(b)(6), as a possible means of curing his jurisdictional defect. In view of our present disposition, however, no such action would be meaningful.