Joseph Leo WALTON

v.

John F. LEHMAN, Jr., Secretary of the Navy.

Civ. A. No. 81–3558.

United States District Court,
E.D. Pennsylvania.

Aug. 25, 1983.

Thomas Kenworthy, Philadelphia, Pa., for plaintiff.

Dawn MacPhee, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

Plaintiff, who served in the United States Navy continuously from March 11, 1963 to April 9, 1982, has a history of alcohol abuse. In April of 1981, the Fiscal Year 1982 Supply Corps Commander Selection Board ("Selection Board") notified the Secretary of the Navy ("Secretary") that plaintiff had not satisfactorily performed his duties at his present grade. Subsequently, in a report given pursuant to 10 U.S.C. § 6384[1],

---

1. Effective September 15, 1981, § 6384 was repealed by the Defense Personnel Management Act ("DOPMA") which was enacted by Congress on December 12, 1980. Pub.L. 96–513, Title III, § 335, Dec. 12, 1980, 94 Stat. 1898. For the pertinent provisions of the DOPMA, see 10 U.S.C.A. §§ 1181–1187 (Supp.1983).

§ 6384 provided, in pertinent part:

(a) Each selection board convened under chapter 543 of this title to recommend officers for promotion shall report, from among those officers eligible for consideration, the name of each officer with less than 20 years of service whose record, in the opinion of the board, indicates his unsatisfactory performance of duty in his present grade, and, in the opinion of the board, indicates that he would not satisfactorily perform the duties of a higher grade.

(b) Each officer on the active list of the Navy or the Marine Corps whose name is reported under this section shall, subject to

the Selection Board recommended that plaintiff be honorably discharged from the Navy.

This report was referred to the Judge Advocate General ("JAG") for review and recommendation, and prior to June 30, 1981, the JAG recommended that plaintiff be discharged on August 30, 1981 if the Secretary accepted the findings of the Selection Board. Plaintiff was informed of the findings of the Selection Board and invited to submit a personal statement or any other pertinent information.[2] Plaintiff availed himself of this opportunity.

After reviewing all the aforementioned information, the Deputy Chief of Naval Personnel ("Deputy Chief") recommended that plaintiff be discharged, and the Chief of Naval Personnel concurred. On August 14, 1981, the Secretary approved the recommendation. Orders to discharge plaintiff were given on August 18, 1981.

Plaintiff filed suit, requesting the court either to enjoin his discharge from the Navy or to order the Navy to give plaintiff a compensable medical discharge.[3] On August 31, 1981 this court temporarily restrained defendant from discharging plaintiff from the Navy. After hearing, a preliminary injunction was issued on September 11, 1981; on defendant's unopposed motion, it was dissolved on March 17, 1982. Plaintiff was discharged from the Navy on April 9, 1982. Shortly thereafter, the case was set for trial, but on June 24, 1982 it was stayed, pending the exhaustion of administrative remedies.

Plaintiff then petitioned the Board for Correction of Naval Records ("BCNR") for reinstatement. The BCNR denied plaintiff's petition on August 16, 1982. The court lifted the stay of proceedings on September 16, 1982. The parties subsequently filed cross motions for summary judgment.

The court found that defendant discharged plaintiff pursuant to an order which was not supported by statutory authority and therefore was invalid as a matter of law. Because plaintiff was not discharged in accordance with the provisions of the statute, the court entered summary judgment in favor of plaintiff and against defendant.

Now before the court are plaintiff's petition for attorney's fees under the Equal Access to Justice Act of 1980, 28 U.S.C.A. § 2412 (West 1976 & Supp. 1983), plaintiff's amended petition, defendant's memorandum in opposition, and plaintiff's reply memorandum. Because I conclude that plaintiff meets the requirements of the EAJA and that defendant has not met its burden of proving its litigation posture was substantially justified, I will grant plaintiff's petition, in part.

Section 2412(d)(1)(A) of the EAJA directs the court to award counsel fees and other expenses incurred by a prevailing party in any civil action, other than tort cases, brought by or against the United States "unless the court finds the position of the United States was substantially justified or that special circumstances make an award unjust." If defendant successfully bears its burden of proving substantial justification for its position or special circumstances, the court should not award fees or expenses to plaintiff. *Dougherty v. Lehman,* 711 F.2d 555 at 560 (3d Cir.1983).

Defendant opposes plaintiff's petition on several grounds. First, without citation of any authority, it argues that plaintiff did not sufficiently support his request for the attorney's fees of Janet Sonnenfeld and expert witness fees of Dr. Edgar Nace. In Exhibit B to the amended petition, the hours expended, types of service rendered and dates on which service was performed by Ms. Sonnenfeld are set forth in great

2. Neither naval regulations nor federal statutes required that plaintiff be given notice or an opportunity to be heard at this stage of the proceedings.

3. Plaintiff subsequently dropped the prayer for compensable medical discharge.

subsection (d), be honorably discharged from the naval service on June 30 of the fiscal year in which his name is so reported. . . .

(d) Each officer designated for limited duty whose name is reported under this section has the option of reverting to a lower grade instead of being discharged . . . .

detail. Thus, defendant's argument with regard to the sufficiency of support is unavailing as to the fees of Ms. Sonnenfeld. Similarly, plaintiff has filed an affidavit concerning, and is willing to submit further documentation of, the expenditure of fees paid to an expert witness. *See* Plaintiff's Reply Memorandum in Support of Application under the EAJA at 3. Plaintiff asserts and defendant does not contest that the witness testified at the preliminary injunction hearing regarding the potential for plaintiff being irreparably harmed.[4] Under the EAJA, a prevailing party may recover reasonable expert witness fees. Nothing of record itemizes the fees paid to Dr. Nace or demonstrates that they are reasonable. The court will, therefore, hold a hearing at which plaintiff may present evidence on this issue.

The government next contends that plaintiff succeeded only on one claim, that work on the issues involved in this claim comprised but a small portion of the total hours expended by counsel, and consequently that the recovery of attorney's fees should be proportionate to the work expended on this claim. Plaintiff counters that the government fails to distinguish between a claim and the legal theory supporting it. Plaintiff argues that he asserted only one claim throughout this entire litigation, i.e., the Navy acted without legal authority when it discharged him. Plaintiff further maintains that he asserted several legal arguments in support of his claim and that the "claims" on which defendant says he did not prevail are, in fact, legal theories on which the court did not base its decision. He contends that, under the EAJA, the court is not required to "apportion costs according to individual points of argument won and lost .... Rather, major claims must be considered." *Marple Township v.*

*Secretary of Transportation,* No. 81–4627, slip op. at 12 (E.D.Pa. Jan. 28, 1983); *see also Dougherty v. Lehman,* 711 F.2d 555 at 560 (3d Cir.1983). Moreover, he argues, as the Supreme Court recently declared in the context of a petition for fees pursuant to 42 U.S.C. § 1988:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants ... counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved".... [T]hese unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim .... In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the time expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40, 51–52 (1983).

■ The sole claim raised in plaintiff's complaint is that the Navy served him with discharge papers in contravention of § 6384. On administrative review before the Board for the Correction of Naval Records ("BCNR"),[5] plaintiff raised several

---

4. The witness testified as to the probability of irreparable harm, a showing which is prerequisite to the entry of a preliminary injunction. Since the injunction was granted, the court finds unavailing the government's argument that plaintiff is not entitled to recover witness fees under the EAJA because he did not prevail on the issue about which the witness testified.

5. Ms. Janet Sonnenfeld was plaintiff's counsel of record when the complaint was filed on August 31, 1981. She moved to withdraw her appearance for plaintiff on February 26, 1982, and, after hearing, her motion was granted. Effective February 26, 1982 and continuing through the present, Mr. Thomas Kenworthy was counsel of record for plaintiff. The review

other claims, *e.g.*, that the Secretary had no authority to discharge plaintiff other than that provided in the DOPMA; that, prior to his discharge, the procedures set forth in the DOPMA were not followed; that his discharge was prohibited by 10 U.S.C.A. § 1168(a) because his discharge certificate was not ready for delivery to him on the day he was discharged; that the procedures prescribed in § 6384 violate due process and discriminate against regular Naval officers as compared to reserve Naval officers, Army officers, and Air Force officers. In the summary judgment motion filed by plaintiff, the aforementioned claims also were asserted.

The court believes that the alternative theories for relief argued before the BCNR and in plaintiff's motion for summary judgment are discrete claims, not legal theories in support of the same claim. By way of illustration, legal theories asserted with regard to the claim on which plaintiff prevailed might include: the express language of the statute requires discharge by June 30; the legislative history demonstrates congressional intent that officers be discharged by June 30; courts have construed the statute as requiring discharge by June 30. The court is not convinced that the late delivery of a certificate of discharge, the procedures required by the DOPMA, and the constitutionality of § 6384 are legal theories related to a claim based on the statutory construction of § 6384. Were the court to adopt plaintiff's characterization of this case as a single claim supported by several legal theories, the opinion of the court in *Hensley* would be eviscerated, for every case, no matter how many claims were made therein, could be characterized as a single claim for relief based upon multiple theories rather than separate causes of action.

On this record, I conclude that the contentions made before the BCNR and asserted in plaintiff's motion for summary judgment are not a single claim supported by various legal theories. Rather, they are discrete claims, unrelated to the narrow statutory claim on which plaintiff prevailed. The documentation of time expended which plaintiff's counsel have filed does not clearly distinguish the amount of time spent on each of the several claims presented. Accordingly, at a hearing, the court will afford counsel an opportunity to present evidence on the amount of time spent on the claim on which plaintiff prevailed and to demonstrate to the court that counsels' efforts with regard to said claim were not duplicative. After the hearing, the court will make an appropriate award of attorney's fees, proportionate to the time spent on the successful claim.

■ Defendant also contests plaintiff's entitlement to recover fees at an hourly rate of one hundred dollars. Section 2412(d)(2) of the EAJA states that attorney's fees "shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." Defendant argues that the issues involved in the instant matter did not require specialized knowledge and expertise, that plaintiff did not meet his burden of establishing the existence of a special factor herein, and that, at best, counsel is entitled to compensation at the rate of $77.86 per hour. *See National Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 703 F.2d 700, 713 (3d Cir.1983) (plaintiff allowed counsel fees at rate of $77.86 under EAJA provision for cost of living increases). Plaintiff argues that "[t]his case raised many questions requiring in depth analyses of issues of first impression." Plaintiff's Memorandum in Support of Petition for Attorneys' Fees and Expenses at 3–4. Defendant concedes that some of the issues in the instant case involved novel questions of constitutional law, statutory interpretation, and administrative procedure. As to the claim on which plaintiff prevailed, the court disagrees. It does not find that the issue on which plaintiff prevailed was novel, exceptionally difficult,

by the BCNR took place during the summer of 1982.

specialized, or an intricate case of first impression. Rather, the claim involved simple statutory interpretation. Plaintiff has not met his burden of demonstrating to the court that "in depth analysis" constitutes a special factor within the meaning of the EAJA. Accordingly, allowing fees at a $100 hourly rate is inappropriate.

Defendant challenges the validity of plaintiff's amended petition, which was filed more than thirty days after final judgment. Defendant claims that it was filed out of time. Defendant concedes that the initial petition was timely filed but argues that the record with regard to the petition closed thirty days after the entry of this court's judgment. Defendant relies solely on § 2412(d)(1)(B) of the EAJA which states in pertinent part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses ... including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses are computed....

28 U.S.C.A. § 2412(d)(1)(B) (West 1976 & Supp.1983). Defendant counters that courts have interpreted "within thirty days of final judgment" to mean within thirty days of the expiration of time to appeal or within thirty days of the termination of the action in the court of last resort. *See, e.g., McDonald v. Schweiker,* 551 F.Supp. 327, 329 (N.D.Ind.1982).[6] I concur with the interpretation of the statutory language given in *McDonald.* Since plaintiff filed the amended petition, containing an itemization of the hours expended by Ms. Sonnenfeld, within the time period set forth in *McDonald,* I conclude that the amended petition is acceptable.

The court finally considers whether the position taken by the government was substantially justified. "The test for whether or not a government act is substantially justified is one of reasonableness. Where the government can show that its case had a reasonable basis in law and fact, no award will be made." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10–11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4989 [hereinafter House Report]. *See also Goldhaber v. Foley,* 698 F.2d 193, 197–98 (3d Cir.1983). Where, as here, there has not been a trial on the merits, the court must examine the government's litigation position and determine whether it was reasonable. *Citizens Coalition for Block Grant Compliance v. City of Euclid,* 537 F.Supp. 422, 426 (N.D.Ohio 1982). The Third Circuit has declared that, "[f]or its action to be justified, the government must make a 'strong showing' that its position was substantially justified." *Natural Resources Defense Council,* 703 F.2d at 712, *quoting* House Report at 16, 18. To make a strong showing that its position had a reasonable basis in both law and fact, the government must show that: (1) there is a reasonable basis in truth for the facts alleged in the pleadings; (2) there exists a reasonable basis in law for the theory it propounded; (3) the facts alleged will reasonably support the legal theory advanced. *Dougherty,* 711 F.2d 555 at 564.

The court in *Dougherty* directed district courts "to examin[e] the relevant documents filed by the parties at every stage of the litigation" to determine whether the government's position was reasonable. *Id.* at 562. One such document filed by the government severely undercuts its assertion that it relied in good faith upon § 6384 as authority for discharging plaintiff and that its reliance was substantially justified. The document, filed of record three weeks after plaintiff received notice that he would be discharged on August 31 and only eleven days after plaintiff instituted this litigation, states in pertinent part:

---

6. *See also Knights of the Ku Klux Klan v. East Baton Rouge,* 679 F.2d 64 (5th Cir.1982), in which the application for fees under the EAJA was not filed until after remand by the Supreme Court, 454 U.S. 1075, 102 S.Ct. 626, 70 L.Ed.2d 609 (1981), and remand by the Fifth Circuit. 679 F.2d at 69.

The reason for filing of the appeal [of the order of this court granting a preliminary injunction] ... is that on September 15, 1981, the Defense Officer Personnel Management Act (hereinafter referred to as "DOPMA") becomes effective.

If a member of the Navy on that date, even under court order, plaintiff would *arguably* be entitled to an increase of $15,000 in severance pay.... It may also be necessary to reprocess in its entirety his discharge .... Such a process could take many months, making it impossible for the Navy to discharge plaintiff until after lifetime pension rights which accrue after 20 years of service, vest.

Brief in Support of Motion for Stay Pending Appeal at 2, *Walton v. Lehman*, No. 81–3558 (E.D.Pa. filed Sept. 11, 1981). A review of the record supports my conclusion that the Navy discharged plaintiff after June 30 and before September 15 not because it was reasonably relying on the authority of § 6384 but because it wanted to effect plaintiff's discharge before the vesting of both the procedural rights prescribed by DOPMA and plaintiff's right to a lifetime pension.

The court next considers whether a reasonable basis in law exists for the position taken by the government. The sole legal theory at issue is the government's interpretation of the requirement of § 6384(b) that a naval officer be discharged by June 30 of the year in which the Selection Board reports his unsatisfactory performance. When § 6384 was enacted, the federal fiscal year ended on June 30. Although the end of the fiscal year was subsequently changed to September 30, § 6384 was not amended. The defendant admits that, since as early as 1977, it has been aware of the inconsistency between the time frame to which the Navy adhered when discharging officers and § 6384, the legal authority pursuant to which it purported to discharge the officers. In fact, in 1977, the JAG recommended that corrective legislation be sought. Neverthe-less, the Navy contends that it perfunctorily treated the continued applicability of the June 30th deadline as a "legislative oversight" and, notwithstanding the clear direction of the statute, "no longer rigidly applied" it. Defendant's Memorandum in Opposition to Plaintiff's Application for Costs, Attorney's Fees and Expenses at 10.

That the government formerly rigidly applied the June 30th deadline belies its assertion that, notwithstanding the statutory language, it believed plaintiff's separation from the Navy under the authority of § 6384, but after June 30, "could be legally effected as soon after approval of the board report as is both practicable and equitable." *Id.*[7] The Navy's contention that its position was reasonably based in law is further undermined by the 1969 opinion of the JAG which states in pertinent part, "a selection of an officer for severance by reasons of unsatisfactory performance must be strictly in accordance with the provisions of Sections 5708 and 6384 of Title 10, United States Code, the only statutory authority for such action." Plaintiff's Motion for Summary Judgment, Exhibit 3.

Defendant cites dictum in *Ralpho v. Bell*, 569 F.2d 607, 627 (D.C.Cir.1977), for the proposition that statutory language intended to insure administrative action by a certain time is "usually construed as directory, whether or not worded in the imperative, especially when the alternative is harshness or absurdity." The court in *Ralpho* made this statement after considering the congressional intent which underlaid a different statute. Moreover, the alternative to following the command of § 6384(b) yields neither harsh nor absurd results. The separation of plaintiff from the Navy could have been effected through proceedings before a Selection Board for the extant year or by proceeding under DOPMA as of September 15, 1981. Absent a clearly expressed legislative intent to the contrary, statutory language must be recognized as

---

7. The court also notes that the opinion of the JAG as to when discharge could "legally be effected" in this case is adversarial in nature. Moreover, this opinion was rendered after plaintiff was discharged and while this litigation was pending.

conclusive. *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Thus, the court reads § 6384 as requiring discharge by June 30.

In neither its motion for summary judgment nor its reply to the instant petition has the government cited a single case or excerpt from the legislative history of § 6384 which supports its argument concerning the June 30th deadline. The Navy submits that compliance with the deadline was administratively inconvenient. In essence, it argues that its previous failures to abide by the provisions of § 6384 provided a basis in law for continuing to ignore the statutory mandate. On the record, I find that the government has failed to meet its burden of showing a reasonable basis in truth for the facts alleged in its pleadings and a reasonable basis in law which supports the theory it propounded. I conclude, therefore, that the position taken by the government was not substantially justified.