SELYA, Circuit Judge
(dissenting).
Congress, in enacting the Equal Access to Justice Act (the EAJA), 28 U.S.C. § 2412, never intended to chill the federal government’s legitimate efforts to enforce statutes and regulations. Fees were to be awarded if — and only if — the government’s stance was not substantially justified. See id. § 2412(d)(1)(A). The majority gives lip service to this principle, but proceeds to flout it.
As the court’s opinion explains, this appeal requires us to revisit a dispute between the Secretary of Labor and a government contractor, Dantran, Inc. On our previous encounter, a divided panel of this court reversed a debarment order promulgated by the Secretary under the McNamara-O’Hara Service Contract Act of 1965 (the SCA), 41 U.S.C. §§ 351-358. See Dantran, Inc. v. Dep’t of Labor, 171 F.3d 58, 75 (1st Cir.1999) (Dantran I). This time around, a different panel is asked to determine whether the district court abused its discretion in denying Dantran’s subsequent motion for counsel fees and incidental expenses under the EAJA. In a strange twist of fate, the majority takes our earlier opinion — an opinion that I authored' — and fashions it into a club, which it then wields to beat the Secretary about the ears. In doing so, the court mistakes the import of what was written.
The Secretary’s consistently held position vis-a-vis Dantran had two components. First, she claimed that Dantran persistently violated a regulation governing frequency of wage payments. See Dantran I, 171 F.3d at 65-66. Second, she claimed that Dantran persistently violated a fringe benefit regulation, 29 C.F.R. § 4.172, by cross-crediting certain benefit payments. Her first claim was indisputably correct: the evidence is uncontradicted that Dantran paid its employees monthly — a practice forbidden by the explicit language of a directly applicable regulation, 29 C.F.R. § 4.165(b). Her second claim was plausible, even though it ultimately was rejected by this court.
The claim was plausible because the Secretary’s understanding of the fringe benefit regulation was perfectly reasonable. At the very least, this regulation was susceptible to conflicting readings. See Dantran I, 171 F.3d at 63; id. at 75 (Cudahy, J., dissenting). And the mere fact that the Secretary, confronted with a choice among plausible interpretations of an opaque regulation, failed to predict how the courts would rule does not suffice to prove that the government acted unjustifiably. See De Allende v. Baker, 891 F.2d 7, 12-13 (1st Cir.1989) (holding that the government was substantially justified in pursuing a novel — but erroneous — interpretation of the law); Martinez v. Sec’y of HHS, 815 F.2d 1381, 1383-84 (10th Cir. 1987) (per curiam) (finding the government position substantially justified when the applicable law was unclear); Dougherty v. Lehman, 711 F.2d 555, 566 (3d Cir.1983) (similar).
The history of the fringe benefit regulation helps to prove this point. The Secretary promulgated the regulation in 1983. When she cited Dantran in 1991, no court had construed it in respect to cross-crediting, and the regulation’s application simply was not self-elucidating in that type of situation. Where, as here, a government actor’s decisionmaking turns on a question of novel impression, the answer to the question would have to be relatively clear to warrant a holding that the government actor’s plausible, though erroneous, response was not substantially justified. See De Allende, 891 F.2d at 12-13 (holding *50 that the government was justified in pursuing its own understanding of a particular provision absent any previous rulings clarifying its meaning); United States v. Yoffe, 775 F.2d 447, 451 (1st Cir.1985) (“We do not think that the government should be found to have acted without substantial justification because it did not foresee how the court of appeals would interpret the regulations.”)- Here, moreover, the fact that the Administrative Review Board (the ARB), the district judge, and one member of the original panel of this court agreed with the Secretary’s reading of the fringe benefit regulation is a strong indicator of the cogency, and thus the reasonableness, of her position. E.g., United States v. Paisley, 957 F.2d 1161, 1167 (4th Cir.1992).
The majority seems to concede, albeit grudgingly, that the Secretary’s attempts to enforce the frequeney-of-payment and cross-crediting regulations were substantially justified. It nonetheless maintains that the Secretary went too far by pushing for debarment. Although it strives mightily to treat these inquiries as separate and distinct, the two are inextricably intertwined.
The SCA requires the Secretary, within ninety days after she concludes that a violation of the statute has occurred, to “forward to the Comptroller General the name of the individual or firm found to have [committed the violation].” 41 U.S.C. § 354(a). The case law makes manifest that debarment “should be the norm, not the exception, and only the most compelling of justifications should relieve a violating contractor from that sanction.” Vigilantes, Inc. v. Adm’r, Wage & Hour Div., Dep’t of Labor, 968 F.2d 1412, 1418 (1st Cir.1992). This case law informs the statutory grant to the Secretary of a limited discretion to recommend against debarment “because of unusual circumstances,” 41 U.S.C. § 354(a). As a result, the “unusual circumstances” standard must be read narrowly. Equally as important, the standard must not be applied in a vacuum. With respect, the majority contravenes both of these tenets.
In this case, the Secretary, having credibly found violations of both the frequency-of-payment and fringe benefit regulations, thought it inconcinnous to exempt Dantran from debarment. The district court upheld that determination. The calculus changed, however, when we set aside the finding that Dantran had violated the fringe benefit regulation. Dantran I, 171 F.3d at 65-66. At that point, after noting that the issue was one of “some complexity,” id. at 68, we conducted a lengthy analysis and determined that unusual circumstances rendered debarment an inappropriate remedy for the violation of the frequeney-of-payment regulation, standing alone. Id. at 68-75. The majority seizes on this determination and argues that it demonstrates that the Secretary was not substantially justified in seeking debarment in the first place. The fallacy in this argument is that it wrests what the prior panel wrote from the context in which we wrote it.
Take, for example, the majority’s reliance on the constellation of mitigating factors (e.g., the first compliance officer’s acquiescence in Dantran’s payroll practices, Dantran’s generally good compliance history, and its prompt payment of all monies due) that the prior panel enumerated to excuse Dantran’s violation of the frequency-of-payment provision. See Dantran I, 171 F.3d at 69-73. The majority transplants these factors, root and branch, from one opinion to the other without the slightest allowance for the stark difference in settings. The prior panel wrote in the context of a finding that Dantran had transgressed only the frequency-of-payment regulation. My brethren write, how *51 ever, for a different purpose — a purpose that requires them to take account of the Secretary’s reasonable belief that Dantran had flagrantly violated not one, but two, substantive regulations. Given this important distinction, the majority’s attempt to use our earlier opinion to debunk the Secretary’s original decision compares plums with pomegranates. After all, by clarifying the meaning of the cross-crediting provision, we removed one of the two principal bases on which the Secretary’s decision to pursue debarment rested.
Stated another way, the Secretary, in deciding not to grant relief from debarment, was entitled to rely on her reasonable (albeit erroneous) finding that Dan-tran had persistently violated the fringe benefit regulation. This factor, together with Dantran’s undeniable violation of the frequeney-of-payment regulation, justified the Secretary’s conclusion that aggravating circumstances prevented relief from debarment. See 29 C.F.R. § 4.188(b)(3)(ii) (explaining that a contractor cannot be relieved from debarment in the face of aggravating factors). Not having the benefit of Dantran I, the Secretary reasonably could have concluded, as did the ARB, that the law left her no choice but to pursue debarment because Dantran had blatantly disregarded two separate regulations. With both breaches in the case, Dantran was culpable (or so the Secretary reasonably could have thought) and there was no “compelling ... justification! ],” Vigilantes, 968 F.2d at 1418, for recommending leniency.
In an effort to shore up its flawed reasoning, the majority suggests that “the Secretary’s persistence” in seeking debarment after the ALJ had found that “Dan-tran had a justifiable, good-faith belief that [the two challenged] practices were lawful” somehow robbed her subsequent actions of any patina of substantial justification. Ante at 44 n. 11. But this occurred quite early in the proceedings — and the majority’s position is tantamount to requiring the Secretary to quit while she was behind. This position is counterintuitive for at least three reasons. First, the Secretary obviously had a better case than the ALJ intuited; after all, she succeeded up and down the line in negating the ALJ’s finding that Dantran’s monthly pay periods were legitimate, and she convinced both the ARB and the district court that the ALJ’s finding as to the cross-crediting of fringe benefits was erroneous. Second, the majority’s position requires the Secretary to keep a crystal ball on her desk; she is charged with anticipating not only a contrary interpretation of the cross-crediting provision but also the precise workings of the SCA’s “odd standard of review.” Dantran I, 171 F.3d at 69. Demanding this kind of clairvoyance is particularly unsettling considering the “interpretive difficulties” that this standard presented. Id. at 70. Finally, the majority’s position creates a perverse incentive, in effect encouraging the government to abandon efforts to pursue reasonable interpretations of federal statutes and regulations whenever it encounters difficulty at an early stage of a proceeding. For these reasons, I believe that it is both unreasonable and unwise to punish the Secretary for her unwillingness to cave in to an ALJ’s debatable findings, forgo judicial remedies, and abdicate her enforcement responsibilities.
I need go no further. The short of it is that, on this record, I see no way to hold that the Secretary lacked substantial justification in not exempting Dantran from debarment. After all, the EAJA does not require the government to be prescient: “substantially justified” does not mean “justified to a high degree, but rather justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person.” Pierce v. Underwood, *52 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (internal quotation marks omitted). Here, the Secretary not only had reasonable bases in fact and law for believing that Dantran had violated the SCA, but also had reasonable bases in fact and law for pursuing debarment. No more is exigible to show substantial justification (and, accordingly, to defeat an EAJA application). See id.; see also Sierra Club v. Sec’y of Army, 820 F.2d 513, 516-17 (1st Cir.1987). Because my brethren set the bar considerably higher for the Secretary, I respectfully dissent.